DANIEL C. GODWIN, Complainant below, Apellant, v. STEPHEN M. COLLINS, Respondent below, Appellee.

The general doctrine of a court of equity is that decreeing of specific performance of a contract is discretionary, especially in those cases in which the party may have adequate compensation at law in the shape of damages for the injury actually sustained; for in such cases the court will not feel itself bound to interfere, but will leave him to pursue his remedy in a court of law.   In these cases it is not what a court of equity must do, but rather what it may justly do under the circumstances.

In the case of a contract in respect to the sale of land, it must be in writing according to the statute of frauds; and it must be a complete written agreement, so complete and perfect, indeed, as to manifest clearly the terms of the contract and the intention of the parties ; and as it is required to be in writing, the writing must speak for itself.   Defects cannot be supplied in it.   It must be certain in itself, or capable of being reduced to certainty by reference to something else which is thus made a part of it, so that the terms of it, and the intention of the

parties can be ascertained with reasonable precision. These rules may, however, be modified in cases of fraud, or part performance of the contract, when they exist.

But when the case stands on the naked agreement alone, and the complainant has not been put in possession of the property, nor has made any improvement, nor expended any money on it, nor has in any respect been led in consequence of the agreement to do anything which has resulted to his detriment, the court will not decree the specific performance of it.

And where the stipulation in the agreement is that one half of the purchase money is to be paid by the purchaser on the day the possession of the premises is to be given, and the remainder in instalments of five hundred dollars each, payable with interest annually, commencing Jan. 1, 1868, but without any provision in it for securing such deferred payments, the court will not supply the omission of it, or infer that it was the understanding and intention of the parties that they were to be secured in the usual method in such sales, by bond and mortgage, or decree a specific performance of the agreement, notwithstanding the complainant tenders one half of the purchase money on the day appointed, and his bond and mortgage on the premises for the deferred payments as stipulated, and in his bill submits himself to the order and direction of the court in that particular. The vendor's equitable lien for the unpaid purchase money, at best, would be but a very imperfect and inadequate security.

The exercise of a sound discretion according to the circumstances of each particular case lies at the very foundation of this extraordinary jurisdiction of specific performance of contracts, and the court, though not exempt from the general rules and principles of equity in granting or withholding relief, uniformly acts with greater freedom than when exercising its ordinary powers.

THIS was an appeal from the decree of the Chancellor sitting in and for Kent County on a bill filed by Daniel C. Godwin against Stephen M. Collins for the specific performance of a written agreement for the sale of a farm to the former by the latter, dismissing the bill, and was heard before Gilpin, C. J., and Wootten, Houston and Wales, Associate Judges.

The only written evidence of the agreement was in a receipt under seal which was as follows: "Rec'd Aug. 20, '66, of D. C. Godwin Ten Dolls. in part payment of the purchase money of the farm and premises where I now live, containing sixty six-acres, possession to be given on

or before Jan. 1, 1867, clear of all taxes or incumbrances whatever, four thousand dolls. to be paid when possession given, the remainder in instalments of $500 each, payable with interest annually, commencing Jan. 1, 1868, the said Godwin, to have the privilege of anticipating the deferred payment—Witness my hand and seal.

S. M. COLLINS   { SEAL }

the whole purchase money to be eight thousand dollars.

"$800"                              S. M. COLLINS.

The substance of the bill and answer, and the evidence in the case, will be sufficiently disclosed in the argument of counsel and the opinion of the Court, to dispense with the necessity of any further statement of them.

*Comegys*, for the appellant    The receipt and agreement contained in it and the signature of the respondent to it were not denied as matters of fact, but were admitted in his answer, although it was pretended that he never signed or considered it as a complete or final contract for the sale of the farm by him to the appellant, but that he signed it hastily after the appellant had as hastily drawn it, as a receipt simply for ten dollars then paid him, without reading it particularly, or even taking or asking for a copy of it, and with the understanding and expectation on his part that a written contract in form was afterward to be drawn for the sale of it and signed by both of them as parties to it. That, however, was but an after thought and a shallow pretext to escape the force and effect of it, for the evidence proved that he was then quite willing to sell the farm to any one for $8000, because, only a short time before that he had authorized two separate agents for the sale of real estate to sell it for that price. And there was no proof whatever that the appellant had resorted to any trick or artifice to mislead or deceive him, or to take any advantage of him in the bargain or transaction. And without

any such proof it required no authority to satisfy the Court that such an agreement, or note or memorandum in writing of a contract in writing signed by the party to be charged therewith, as this was, is sufficient both in form and substance to bind the party either in a court of law or equity.

But the Chancellor had dismissed the bill in his court on the sole ground that the agreement did not designate the manner in which the deferred payments should be secured by the appellant to the respondent, and, therefore, in the exercise of that equitable discretion which he deemed himself clothed with in a case of this kind, he had declined to decree the specific performance of it. The specific performance of contracts was an ancient branch of the equitable jurisdiction of the Court of Chancery in consequence of the inability of the courts of common law to enforce the actual performance of them, and could only give damages for the breach of them; but damages in many cases would constitute no just equivalent for the loss incurred by the breach of them, and to avoid such defect of justice, courts of equity will intervene to compel the specific execution of them, if they are in other respects fit for the intervention of such a tribunal. And although in an action at law the exact performance of his part of the contract by him, must be alleged and proved by the party suing upon it, yet a distinction is made in courts of equity between such terms as are of the substance or essence of the contract, and such as are not, and a breach of which it would be inequitable and unjust for either to set up against the other as a reason for refusing to perform it. *Fry on Spec. Perf. Secs.* 1, 2, 3, 11. And the remedy in equity is said to be the more natural of the two and better fulfills the great object of the law, which is the performance of contracts. And in doing this courts of equity but carry out the principles of the common law, giving that remedy which courts of common law would give if their mode of administering justice were adapted to the case.

It was true, however, that all such applications are addressed to the sound discretion of such a tribunal. Never-

theless, the discretion which it exercises in declining to decree the specific execution of a contract, is not an arbitrary, but a sound judicial, discretion; for if it is a case proper for specific performance, the court is not at liberty to refuse it. And that was what was meant by Sir William Grant, Master of the Rolls, when he remarked, " supposing the contract to have been entered into by a competent party, and to be in the nature and circumstances of it unobjectionable, it was as much, of course, the duty of a court of equity to decree a specific performance of it, as it would be of a court of law to give damages for the breach of it. 3 *Pars. on Contr.*, 350, 351, *notes a b c d. Lumley v. Wagner*, 13 *E. L. & E. R.* 257. *Hall v. Warren*, 9 *Ves. Jr.*, 606. The exercise of this whole branch of equity jurisprudence respecting the rescission and specific performance of contracts, says Mr. Justice Story on the subject, is not a matter of right in either party, but is a matter of discretion in the court, not, indeed, of arbitrary or capricious discretion dependent upon the mere pleasure of the Judge, but of that sound and reasonable discretion which governs itself, as far as it may, by general rules and principles, but which at the same time withholds or grants relief according to the circumstances of each particular case, when these rules and principles will not furnish any exact measure of justice between the parties. And on this account it was not possible to lay down any rules and principles of absolute obligation and authority in all cases. 2 *Story's Eq. Juris.* sec. 742.

But the respondent in this case never refused to perform the agreement on the ground that it contained no provision or stipulation for securing the deferred payments of the balance of the purchase money. On the contrary, until the filing of his answer by his counsel, the only reason assigned by him for refusing to perform it, was his alleged inability to prevail upon his wife to consent to, and unite with him in, the sale and conveyance of the property to the appellant. It was not necessary, however, that there should have been any such provision or stipulation in the

contract, because if the premises had been conveyed by him to the appellant in accordance with the agreement, without any bond, or mortgage, or other usual security in such purchases, for the payment of the future instalments, he would have had, at least, the security of a valid and sufficient lien in equity upon the premises themselves for the payment of them, not only so long as the farm remained in the possession of the appellant, but also in the possession of any subsequent purchaser with notice or knowledge of the fact that the balance of the purchase money remained unpaid by him, particularly, as the agreement was wholly silent on that subject, and there was no special agreement between them in relation to that matter. 4 *Kent's Com.*, 151, 152, 153, 154. 2 *Story's Eq. Juris.*, secs. 1217, 1225. *Budd et al. v. Busti & Vanderkemp*, 1 *Harr.* 69. The contract itself was, therefore, sufficiently certain and complete without any such special or express stipulation in it on that point. Before, however, the bill was filed, and when the appointed time had come for the execution or performance of the agreement by the respondent, the appellant not only made him in due form a tender of the sum of money, ($4000,) then payable under it, but also voluntarily made him a formal tender of his judgment bond and a mortgage on the premises for the balance of the purchase money payable by instalments with interest annually thereafter as stipulated in the contract, but which the respondent refused to accept, not because of any insufficiency or imperfection in them, but because he had by that time deliberately and fraudulently made up his mind, at all hazards, not to perform it, under the false pretense alone that his wife would not consent to the sale of the farm or join with him in the execution of a deed for it, because it had been clearly proved in the depositions that up to the date of the agreement, and at the time of his signing it, she was entirely willing and quite eager for him to sell it, and to unite with him in the sale of it, provided he could obtain eight thousand dollars for it, and he so expressly informed the appellant when he signed the

receipt and agreement. What justification, defence or excuse then could there have been for his refusal to perform it, upon the ground that it contained no stipulation whatever for securing the deferred payments of the balance of the purchase money? But such security as was voluntarily tendered by the appellant, was necessarily understood and implied, and was contemplated and intended by both of the parties when the receipt and agreement was signed, in accordance with the uniform custom and practice in all such purchases of real estate here and elsewhere, notwithstanding there was no such stipulation expressed in it. Such security was, after all, however, but a matter collateral to the agreement itself, but it constituted by implication and intendment of the parties, as much a condition precedent to the actual conveyance of the premises to the appellant, as if it had been expressly stipulated in the contract. And as such, there was no doubt a court of equity would have the power, and would not hesitate to exercise it, to dictate and impose the duty upon the purchaser in such a case, of giving such security in decreeing the specific performance of such a contract. 3 *Pars. on Contr.* 407, 408, *note k. London & Birmingham Railway Co. v. Winter, Craig & Ph.* 57, 61. And, of course, in this case, this Court could and would require ample security from the appellant by his judgment bond and mortgage of the premises or any other security deemed necessary for the deferred payments, the appellant in his bill filed having submitted himself to the direction of the court in regard to that matter.

But he would go further and confidently contend that where the contract was in writing and was within the requirements of the statute of frauds, and was sufficiently certain and explicit in what was expressed in it, or in what was agreed upon and inserted in it, and could not be successfully impeached or assailed on the ground of fraud, imposition, or mistake, or the omission of any material provision or stipulation agreed upon and intended to be incorporated in it, a court of equity is upon principle as

much bound to exercise its jurisdiction in regard to it and to enforce the specific performance of it, as a court of law would be to entertain an action and give damages for the breach of it; and was absolutely bound to do so, whenever the damages recoverable in an action would afford but an inadequate equivalent for the injustice done, or the loss sustained by the other party by reason of the infraction of it. Even in this case the pecuniary loss merely incurred by the appellant might be but trifling, and could readily be repaired in pecuniary damages by an action at law, but his particular admiration for the place, his special desire to purchase and to own the property, and his design and expectation of making it the future residence of himself and his family, and the sudden disappointment of all his hopes and plans in regard to it, and the chagrin and mortification to which he was subjected by the bad faith of the respondent in the transaction, could not be atoned for or redressed by any sum which a jury would allow in an action at law for his breach of the contract.

*Watson*, (*Ridgely*) with him, for the appellee. The counsel for the appellant had confined his argument to the point ruled by the Chancellor in his decree in the case below, but he should not follow his example, on the contrary he would argue it on all the grounds relied upon by the counsel for the respondent in that court, with the exception of the point made as to the necessity of an internal revenue stamp upon the instrument in question, which they would here waive and abandon.

Courts of Equity do not, as a matter of course, decree specific performance of contracts, but their jurisdiction in respect to that matter, rests in the sound discretion of the court upon a careful consideration of all the circumstances attending on each particular case, and in the exercise of its jurisdiction in such cases, either withholds or grants the relief prayed for with a greater freedom of discretion than in the exercise of its ordinary powers. *Seymour v. Delancy*, 6 *Johns. Ch. Rep.* 222. *S. C.* 3 *Cow.* 445. *Hudson v. Layton*, 5 *Harr.* 74. *Torry v. Buck et al.*, 1 *Green's Ch.*

*Rep.* 367. *Ely v. Perrine,* 1 *Green's Ch. Rep.* 396. *Meeker v. Meeker et al.,* 16 *Conn.* 403. *Tyson v. Watts,* 1 *Md. Ch. Rep.* 13. *Gould v. Womach and wife,* 2 *Ala.* 83. *Perkins v. Wright,* 3 *Harr. & McHenr.* 327. *Leigh v. Crump,* 1 *Ired. Eq. Rep.* 299. 1 *Story's Eq. Juris.* secs. 742, 769. *Radcliffe v. Warrington,* 12 *Ves.* 325. *Harnett v. Yielding,* 2 *Sch. & Lef.* 548. 3 *Pars. on Contr.,* 351 note e. *Myers v. Watson,* 7 *E. L. & E. R.* 69. *Gasque v. Small,* 2 *Strob. Eq. Rep.* 22, 77. *City of London v. Nash,* 1 *Ves.* 12, *Underwood v. Hitchcox,* 1 *Ves.* 279. *Young v. Clerk, Prec. in Chanc.* 538. *Talbot v. Ford,* 31 *Eng. Ch. Rep.* 173. *Kimberley v. Jennings,* 9 *Eng. Ch. Reps.* 300. *Clitherwell v. Ogilvie.* 1 *Dess.* 257. *Ward v. Webber,* 1 *Wash.* 229. *Wedgewood v. Adams,* 6 *Bear.* 600. *in* 2 *White & Tudor's Ld. Ca.* 556. *Howell v. George,* 1. *Mad. Rep.* 17. *Fain v. Brown,* 2 *Ves.* 307. *Savage v. Taylor, Ca. Temp. Talb.* 234. *Joynes v. Statham,* 3 *Atk.* 387. *Gould v. Kemp.* 8 *Eng. Ch. Rep.* 7. 5 *Viner's Abr.* 539. 1 *Sug. on Vend.* 274. *Geiger v. Green,* 4 *Gill's Rep.* 472. *Tyson v. Watts,* 7 *Gill's Rep.* 124. *Rider & Trotter v. Gray et al.,* 10 *Gill's Rep.* 282. *Fry on Spec. Perf.* 83. *Buxton v. Lister & Cooper,* 3 *Atk.* 382. 1 *Story's Eq. Juris.* sec. 769. *Ellard v. Ld. Landuff,* 1 *Ball & Beat.* 108.

But what is termed the contract in this case the depositions read in evidence distinctly prove what is sufficiently apparent on the face of it, that it was prepared in great haste and with improper precipitation, and was drawn by the appellant himself, and was at once taken into his possession, and had been in his possession ever since; and no copy of it was ever delivered to the respondent. It was, therefore, evident that it was not only imprudently and incautiously signed by him and given to the appellant without his ever considering it, as he has averred in his answer, or supposing that even the appellant would consider it, either in form or effect, as a contract—much less a complete contract—between them for the sale of the farm, but rather as a receipt for the amount of money then paid him, to be followed afterward by a written contract prepared with proper care and drawn in due form and signed by

each of them. And independent of the evidence, there was quite enough apparent upon the face of the receipt to warrant such an opinion and understanding on his part, and to sustain the allegations contained in his answer on that point. For it was manifestly an incomplete and imperfect contract, which could not be enforced any where without essentially amending it by adding other material terms and stipulations to it, and which the respondent could not even in the haste and hurry of the moment have overlooked or omitted, if he had supposed that it was a contract for the sale of the farm, or that it would ever be claimed or set up by the appellant to be such. But neither this court, nor the court below, nor any other court has the power in any such case as this case has been shown to be, to perfect or complete such a contract, if it may be called a contract, by adding any such material terms or provisions to it, for even the price to be paid for the farm was wholly omitted until after it had been signed by the respondent and then only added in a brief and equally hasty line written below his signature, whilst it contained no provision or stipulation whatever for securing the one-half of it with interest to be paid by annual instalments which were to run through a period of no less than eight years from the time he was to have the possession of it. *Ld. Ormond v. Anderson,* 2 *Ball & Beatty's Rep.* 183. *Bayly v. Tyrell,* 2 *Ball & Beatty's Rep.* 180. *Clenan v. Cook,* 1 *Sch. & Lef.* 22. *Clowes v. Higginson,* 1 *Ves. & Beam* 524. *Cappes v. Holt,* 5 *N. Car.* 153. *Mallory v. Mallory, Busb. Eq. Rep.* 80. 1 *Ch. Genl. Pr.* 828. *Hammer & Dawler v. McEldowney,* 46 *Penna.* 334. *Miller v. Chetwood et al.* 1 *Green's Ch. Rep.* 208. *Cadman v. Horner,* 18 *Ves.* 10. 1 *Pars. on Contr.* 492. 1 *Mad. Ch.* 320. 1 *Story's Eq. Juris.* secs. 750, 76-, 770. *Cathcarl v. Robinson,* 5 *Pet.* 3-8. *Mortlock v. Buller,* 10 *Ves.* 292. *Campbell v. Spencer,* 2 *Binney* 129. 3 *Pars. on Contr.* 416, note *k. O'Rourke v. Perceval,* 2 *Ball & Beatty's Rep.* 29. *Philips v. The Duke of Bucks,* 1 *Vern.* 227. *Fry on Spec. Perf.* 92. *Turning v. Morris,* 2 *Brown's Ch. Ca.* 326. *Matthews v. Terwilliger,* 3 *Barb.* 50. *Vanscoten v. Albright,* 1 *Hall's Ch. Rep.* 467.

In the sound discretion with which a Court of Equity is unquestionably endowed in the exercise of jurisdiction to enforce the specific performance of contracts, it will inquire into and consider all the facts and circumstances connected with the case presented to it, and, among other things, how the property was acquired by the party contracting to sell it, particularly when he has a wife who will not consent to it, and who has a special legal or equitable interest in the property to be affected by it. In this case it had been proved that the respondent purchased the farm in question with money realized from the sale of another which belonged to his wife in her own right, and to the sale of which she consented with the understanding and agreement between them, that the proceeds of the sale of it should be invested in the purchase of this one to be retained as a home for them, and which for that reason was never to be sold by him without her consent, or against her wishes. And as she had been from the first, and still was unquestionably opposed to the sale of it, and to the agreement on which this suit was founded, it would be inequitable and unjust to her to decree a specific performance of it as prayed for, and for that reason the court ought not to decree it. 2 *Story's Eq. Juris. sec.* 1259. 2 *Washb. on Real Prop.* 171. *Tarpley v. Poage's Admr* 2 *Texas Rep.* 139. *Graham v. Graham,* 1 *Ves.* 275. *Mackreth v. Simmons,* 15 *Ves.* 349. *Lyford v. Thurston,* 16 *N. H.* 399. *Lloyd v. Spillet,* 2 *Atk.* 148. *McKennan et al. v. Sullivan et al.* 13 *Iowa,* 521. *Sug. on Vend.* 391. *Newell v. Morgan,* 2 *Harr.* 225. Besides, courts of equity will not compel the wife to join her husband in a deed in any case whatever. *Emery v. Ware,* 8 *Ves.* 505. *Fry on Spec. Perf.* 202. 3 *Pars. on Contr.* 313. *Woodenct et al. v. Morris and Wife,* 2 *Green's Ch. Rep.* 65. 4 *Viner's Abr.* 202. *Young v. Paul,* 2 *Stoct. Ch. Rep.* 401. 1 *Story's Eq. Juris. Secs.* 731, 732, 733, 734. *Davis v. Jones,* 4 *Bos. & Pul.* 267. *Clerk et al. v. Rains,* 12 *Gratten* 98. *Weed v. Levy,* 2 *Doug.* 344.

And a court of equity will refuse to decree the specific performance of a contract, where the bargain is a hard, in-

equitable, or unconscionable one, or where a material provision or stipulation agreed on by the parties has not been inserted in it, either through fraud or mistake in drawing the contract, or where it is not mutual, fair, certain, reasonable and complete in all its parts. *Kimberley v. Jennings,* 9 *Eng. Ch. Rep.* 300. *Talbot v. Ford,* 36 *Eng. Ch. Rep.* 171. *Campbell v. Spencer,* 2 *Binney* 129. *Gould v. Kemp,* 8 *Eng. Ch. Rep.* 9. 2 *White & Tud. Ld. Ca.* 556. *Joynes v. Statham,* 3 *Atk.* 388. *Rider v. Trotter,* 10 *Md.* 282. 5 *Viner's Abr.* 539. 1 *Ves.* 12, 279. *Prec. in Ch.* 538. 2 *Ves.* 307. *Sug. on Vend.* 274. *Fry on Spec. Perf.* 92. *Bayly v. Tyrrell,* 2 *Ball & Beat* 363. *Hudson v. Layton,* 5 *Harr.* 74. *Van Scoten v. Allbright,* 1 *Hals.* 467. And it is very doubtful, to say the least, whether the appellant, had he sold and conveyed the farm to the respondent under such a contract, would have had an equitable lien on the premises, even in his hands, for the unpaid balance of the purchase money. *Budd et al. v. Busti & Vanderkemp,* 1 *Harr.* 69. *Rev. Code* 270, *sec.* 21. *Bailey v. Greenleaf,* 7 *Wheat.* 46. *Gilman v. Brown,* 1 *Mas.* 192, 1 *White & Tud. Ld. Ca.* 241, 242, 250, 251.

As before remarked, the application to a court of chancery for the specific performance of a contract is not based on a claim of absolute right, but is addressed to the sound discretion of such a tribunal to be exercised and determined according to the circumstances of each particular case, and the general ground on which it exercises this sound discretionary power, and will decree a specific performance of it is, because an action at law to recover damages for a breach of it, and as an equivalent to the other party for the non performance of it, could not afford him a complete and adequate remedy, or entire justice and proper reparation for the loss and injury thereby entailed upon him under the particular circumstances of the case. But in the case now before the court, what loss, what injury, what disappointment even, had the appellant sustained, that could not be properly estimated and adequately redressed in an action at law ? The proof that he never professed to the

respondent in his applications to him for the purchase of the farm, that he desired or intended it as a residence for his family, or that he particularly wanted it for any purpose whatever, and that he hesitated at first to give $8000, and only consented to do so after Mr. Harris, the real estate agent, had advised him to give it, and had assured him that he could sell it for more money, did not correspond very well with the high pretension now set forth with so much warmth and earnestness by his counsel, that it had for him a special charm far beyond its intrinsic worth, or value to any body else, or with those high, but disappointed hopes and expectations on his part, which it seemed, could never be atoned for, or recompensed in any amount of money, or with anything else than the actual possession of the property. But viewing that matter in its gravest aspect, whatever might have been the measure of his desire, or of his disappointment in that respect, it could afford no better ground for serious consideration and redress in a court of equity than in a court of law in such a case ; and as eight thousand dollars was quite as much as the farm was worth in money to him, or any body else, and it would not sell for more, if as much, at this very time, the actual loss, and the only loss, which this court, or any other court could consider in such a case, was the trifling sum of ten dollars paid by him to bind the bargain for which he holds the receipt, and which he could certainly recover back in an action of law, if nothing more. But no case could be found in the books in which specific performance of a contract had been decreed on any such ground as had been disclosed in this case ; nor had it ever been done in any case without its appearing to the satisfaction of the court from the particular circumstances attending it, that by reason of the misconduct, persuasion or inducement of the other party, the complainant had been placed in a position under the faith of the contract in which he would unavoidably incur serious pecuniary loss and injury for which an action at law could afford him no adequate compensation, as where he has been put in possession of the property un-

der the contract and has expended money in improvements upon it, or has assumed or incurred pecuniary liabilities on account of it, for which a court of law could afford him no redress.

If the receipt, or agreement, if such it might be called, had even provided that the deferred payments of the purchase money were to be secured in any manner, or in the usual way, so far as that matter alone was concerned, the court in decreeing a specific performance of it, might prescribe the mode of securing them, and impose such terms upon the complainant with regard to it as it deemed proper, and then the objection taken to the bill on that ground would be of no avail. But without any such terms in the agreement, and it being wholly silent on that subject, the court had no power whatever to add them, or any other material terms or provisions to it, and could not prescribe or impose them, notwithstanding the complainant in his bill had submitted himself to the directions of the court in that respect. For a court of equity can only decree the specific performance of the contract which has been proved before it, but cannot add to, or take from it, or amend, or alter it in any essential particular in order to obtain jurisdiction of it.

But if the court in the exercise of a sound discretion in this case should conclude to decree the specific performance of such a contract as this, how can it enforce it according to the terms of the contract ? For by the terms of it, the conveyance of the farm is to be clear of all incumbrances. But would a conveyance with a covenant merely against all incumbrances, such as is prayed for in the bill, be in compliance with the contract in that particular ? It is to be conveyed clear of all incumbrances, but that a conveyance with a covenant against all incumbrances, is not a conveyance clear of all incumbrances, either in terms or in effect, is too clear to be argued. But no such covenant had ever been decreed in any case, except where the contract has been performed, and the purchaser has been put into possession of the premises by the vendor previous to the institution of the suit.

*Comegys.* There was no foundation in fact for the pretense that the respondent only regarded the instrument in question as a receipt simply, or never supposed that it was an agreement in writing for the sale of the farm, for the fact proved that in a short time afterward he applied to the appellant to release him from the contract, clearly proved the contrary, and that he was well aware of the contents and character of it. And it was not only a contract, but a complete contract in itself for that purpose, notwithstanding it contained no terms or provision for securing the deferred payments, for nothing in fact had been said or agreed upon bewteen them about the mode of securing them. That, however, was but a collateral matter, not absolutely essential to be understood by them, or inserted in it, and there could be no doubt that it was a complete, valid and binding contract without it. When a lease is to be executed, the court will intend that it was to be executed with all the covenants incident to the enjoyment of the premises, and will so decree, although the contract contains no such stipulation. 2 *Sch. & Lef.* 556. And so in this case the court would intend that the deferred payments in annual instalments were to be secured in the usual method, which was by bond and mortgage.

The Chancellor read his opinion delivered in the court below, assigning his reasons for refusing to decree a specific performance of the contract.

*Bates*, Chancellor. Of the several grounds taken in argument against a decree for the specific performance of this contract it has been found necessary to consider only one, that is, the omission in the memorandum of the contract of any provision for securing the deferred payments of purchase money. Two points must be observed at the outset, in order that we may the better appreciate the effect of this omission upon the complainant's case. First, is the gross inequality and improvidence of the contract without some security for deferred payments of such large amount. Here is a credit given for one-half the purchase

money of real estate, a sum not less than $4000.00. The credit is to run during eight years after the vendor shall have parted with his title and possession, and yet is to be not only without the usual form of security by bond and mortgage, but even without any evidence of the complainant's personal obligation to pay, such as a bond, note or even due bill, leaving in the defendant's hands in lieu of of his lands nothing whatever whereby to charge the complainant. For the sole written evidence of the complainant's responsibility, viz: the receipt, is his property and comes now from his possession. Now, though a provision for securing deferred payments may not be technically one of the constituents of a contract in its legal definition, it is certainly a very material ingredient in considering the question of the fair and equal operation of the contract, so much so that such a provision is uniformly inserted in contracts for the sale of real estate, and the present one is, doubtless, the only known exception. The other feature of the case to be here noticed is, that provision for the deferred payments was omitted in this memorandum, not because the defendant chose to waive it, but through an oversight of the necessity for it, an oversight due to the hasty conclusion of the contract before its terms had been matured in the minds of the parties, to which result moreover the complainant was himself instrumental, though it should be added in justice to him, without any improper design. In the negotiation which had been pending for some two or three weeks prior to the date of the contract (Aug. 20, 1866) the minds of the parties were fixed only upon the question of price, Collins insisting upon $8000.00, Godwin offering $100.00 per acre. On the 17th of August Godwin first acceded to Collins' price and to his terms of payment, i. e. $4000.00 to be paid in cash on the delivery of possession, and the balance in annual instalments of $500.00 or $1000.00 each, with interest annually. But nothing was at that time said, and doubtless nothing thought of, by the parties as to the mode of securing the deferred payments. The further detail of the negotiation was held

in suspense by the necessity of obtaining the consent of Collins' wife to a sale before a conclusion could be reached. For this time was given. At the next meeting, three days afterward, Collins announced the decision of himself and wife to sell. Now, it is just at this point that the question would be expected to arise, how shall the deferred payments be secured? It is impossible to believe that had the bargain been concluded with the usual deliberation and legal formalities, a provision so important, and one uniformly introduced into such contracts, would have failed, as it did, to be, at least, considered. But Mr. Godwin's anxiety to secure the bargain precipitated it to an instant conclusion, and on his suggestion, without any deliberation or opportunity to mature its terms in detail, there is written by him, not the appropriate and usual form of contract, but a receipt for $10.00 on account of purchase money, embracing a statement of the bargain but so hastily and loosely drawn that the price of the farm is not stated in the body of the receipt but is added in a note below. And thus the usual security for the deferred payments was not provided, neither was it waived, but it was wholly overlooked. This construction of the acts of the parties is presumable not only from the unusual and unequal character of the contract as it stands and from the extreme haste and looseness of the transaction, but additionally and very strongly from the evident understanding of the complainant himself that security for the deferred payments was not waived as shewn by his tendering a bond and mortgage, the usual form of such security, before demanding a conveyance.

Let me now state the ground of the decree dismissing the bill. Considering that the contract, without any security whatever for the deferred payments, is hard and un-equal, that if so executed it would work injustice between the parties, and that such provision was not waived but its necessity inadvertently overlooked, the contract, being in this particular, immature, I am of opinion that a Court of Equity, exercising that discretion which appertains to

its jurisdiction for specific performance, ought not to execute the contract according to its terms, and that it has not the power to supplement the contract by prescribing some mode of security which the parties themselves have not stipulated for.

Against this conclusion several arguments were pressed by the complainant's counsel. First, that the lack of any special security for the deferred payments would be supplied to the defendant by the vendor's lien for purchase money. This, if true, would afford only a precarious security, since the vendor's lien does not follow land into the hands of a purchaser for value and without notice. But whether what is known in England as the vendor's lien is here recognized remains in doubt since the case of *Budd v. Busti & Vanderkemp*, 1 *Harr*. 69, in the Court of Errors and Appeals. In that case, though the decision went upon other grounds, a majority of the judges expressed opinions decidedly adverse to the recognition in this state of a vendor's lien for purchase money. The policy of our law is against liens not of record, and the necessity for the vendor's lien is practically superseded by the long settled and uniform habit of our people to take special securities for unpaid purchase money. Next, it was insisted that the Court might by its decree direct that bond and mortgage or some other sufficient form of security be given by the complainant for the deferred payments as a condition of a conveyance to him, the complainant having by his bill submitted himself to the direction of the Court in the premises. But the Court cannot oblige the defendant to accept a security, however adequate it may be, which he never stipulated for, simply because the complainant is willing to give it. Clearly, this would be to make a contract for the parties rather than to execute one made by them. That the Court has no such general power, is a point not to be discussed. There are indeed, a few cases, altogether exceptional, in which the Court has, in decreeing a specific performance, imposed upon a party some terms not stipulated for in the contract. That has been done when a per-

formance having been partially made, its completion according to the strict terms of the contract has become impracticable; as through some defect of title or outstanding incumbrance, or change in the condition of the property. In such case where the parties have already acted under the contract and their interests have become so involved that they cannot be put *in statu quo*, the Court, in order to prevent gross injustice, will complete the execution of the contract, making such equitable adjustment between the parties by way of compensation or indemnity as circumstances may admit of. *Davis v. Horne* 2 *S. & L.* 340, and *Young v. Paul*, 2 *Stockt. N. J. R.* 402, are cases of this class.

But the third and the more earnestly argued ground taken for the complainant was that which challenged the discretionary character of the jurisdiction of the Court for specific performance. It was insisted that the contract being in writing within the Statute of Frauds, sufficiently certain in what is expressed, and unimpeached for fraud or for mistake in the omission of any provision agreed upon and intended to be inserted, a Court of Equity is bound to enforce it without respect to consequences, the Court not having, as the argument assumes to be the now settled law, a discretion to withhold its interference and leave the parties to their legal remedies upon the ground that in its judgment a specific performance will, under the circumstances, work injustice.

A patient examination of the whole course of decisions on this subject has left with me no doubt that as a matter of judicial history such a discretion has always been exercised in administering this branch of equity jurisdiction. It is the established rule that " a specific performance of a contract of sale is not a matter of course but rests entirely in the discretion of the court upon a view of all the circumstances." So Chancellor Kent sums up his review of the authorities in *Seymour v. Delancy*, 6 *Johns. Ch. R.* 225. More fully stated, the doctrine is this. In a court of law, if a contract be between competent parties, and if, when for the sale of lands, it be reduced to writing, a breach of

it is actionable, notwithstanding it may be hard and un-
conscientious: though this a jury may consider in assess-
ing damages.	So, a Court of Equity will not interfere to
set aside a contract upon any ground short of incompe-
tency or fraud; but when called upon to enforce a con-
tract specifically, the court will go further and inquire
whether the contract is an equitable one,—such as a Court
of Equity, seeking only to do equity, ought to enforce—
Not that this Court will weigh nicely the relative advan-
tages or disadvantages of a bargain fairly made; but it
will consider whether, either from gross inadequacy of
consideration or inequality of terms, such as shocks the
common sense of justice, or from anything in the relations
of the parties or in the circumstances of the contract, it is
unconscientious for a party to exact his advantage.	Now,
as it is impossible to reduce within the limits of a legal
definition or rule the various and complicated transactions
which may render a contract inequitable, the Court must
unavoidably deal with each case upon its own circum-
stances.	Herein precisely, appear the nature and limits of
the discretion assumed by the Court for this branch of its
jurisdiction, and also in what sense it is that a specific
performance is said to be "not a matter of course."	The
relief lies in the discretion of the Court so far, and only
so far, that it must necessarily judge whether under the
circumstances of the case the contract is or is not an in-
equitable one.	That being determined, judicial discretion
ceases: then, not before, what was quoted in argument
from Sir Wm. Grant, 9 *Ves. Jr.* 608, becomes applicable,
that "supposing the contract to have been entered into by
a competent party and to be," he adds, "in the nature and
circumstances of it unobjectionable, it is as much of course
in this court to decree specific performance as to give
damages at law."

This doctrine of the discretionary character of the jur-
isdiction for specific performance, if traced historically,
will be found to have sprung necessarily out of the objects
for which the jurisdiction came to be exercised, and to rest

upon solid grounds. The jurisdiction is very ancient. According to *Fonblanque, Book I, Sec.* 5, *n.* (o), it was established as early as the reign of Edward IV, and, as was said in the argument, the relief it affords is "the natural and better remedy," which the courts of law fail to afford only because their modes of procedure are unsuited to it. Yet, in point of fact the Courts of Equity have never treated specific performance as a merely alternative relief to that of damages at law, such as might be resorted to at a plaintiff's bare election ; but they have always administered it only as a supplementary remedy, in order to effect more complete justice in cases where damages afford an inadequate redress. Lord Redesdale, in *Harnett v. Yielding*, 3 *S. & L.*, 552 ; Sir Wm. Grant in *Hunt v. Brandon*, 8 *Ves. Jr.*, 162. Hence it is that to contracts for chattels or money the equitable remedy was not applied except in special cases ; as where a chattel, such as a picture, has a peculiar value, not to be measured by damages. Under contracts for lands this relief came to be general, the performance of such contracts specifically, being always considered the only adequate remedy. Lord St. Leonards, who was quoted from 13 *Eng. L. & Eq: R.*, 257, does not there claim for this jurisdiction a larger application than has been stated ; and taking it to be thus limited,still it affords ample scope for his Lordship's high commendation of it as being founded in natural justice and conducive to a general spirit of good faith and fair dealing. This jurisdiction being thus as it was often termed, an "extraordinary" one, exerted originally in order to effect more complete justice in certain cases where the courts of law failed, it came naturally to be considered that the court ought not to exercise it when, under the circumstances, it would work injustice between the parties ; and that rather than even hazard such a consequence, it were better to remit the parties to their old remedy at law. Says Lord Redesdale, in 2 *S. & L.* 554, "under these circumstances," i. e. where injustice may be done by a decree, "I think considerable caution is to be used in decreeing specific performance of

agreements, and the court is bound to see that it really does that complete justice which it aims at and which is the ground of its jurisdiction." The caution of the court in dealing with these cases was further enforced by another consideration adverted to in the earlier decisions, viz; that while at law a jury may mitigate damages, according to the circumstances, a Court of Equity, if it act at all, must do so with unmitigated severity, enforcing the contract strictly and under all circumstances. Lord Somers in 5 *Viner* 539; Chancellor Kent in *Seymour v. Delancy*, 6 *Johns. Ch. R.* 230. It *is* an objection of not a little force to this doctrine of judicial discretion that it involves some uncertainty in decisions, since different minds may be differently affected as to the equities of particular cases. But the alternative is between this and the rigorous execution of all contracts made between competent parties and in legal form, however hard and unconscionable they may be; and it is in accordance with settled judicial sentiment, founded upon great reflection and experience, that on the whole, it will work the less inconvenience and injustice to confide each case to the sound discretion and conscience of the court, subject to correction upon appeal.

But, whatever be the grounds of the doctrine, the discretionary character of the jurisdiction for specific performance, the power to grant or refuse relief according to the equities of the particular case, has become settled by authority of the most eminent judges of all times; such as Lord Chancellors, Somers, 5 *Viner*, 539; Macelesfield, *Prec. in Chan.* 538; Talbot, *cas. temp. Talb.* 234; and with great clearness and precision, by Lord Hardwicke in several cases, 2 *Atk.* 133; 3 *Atk.* 385, 388; 1 *Ves. Sr.* 12, 279. That great judge said, in *Joynes vs. Stratham*, 3 *Atk.* 388, "the *constant* doctrine of this Court is that it is in their discretion whether in such a bill they will decree a specific performance, or leave the plaintiff to his remedy at law." In *Buxton vs. Lister*, 3 *Atk.* 385, he said, "nothing is more established in this Court than that every agreement of this kind" (i. e. of which a specific performance is sought)

7

" ought to be certain, fair and just in all its parts. If any of these ingredients are wanting in the case, this Court will not decree a specific performance—For," he adds, " it is in the discretion of the Court whether they will decree a specific performance, because, otherwise, as I said before, a decree might be made which would tend to the ruin of one party." Again, in *Underwood vs. Hitchcock*, 1 *Ves. Sr.* 279, the same Judge, refusing to enforce a contract upon an inadequate consideration said, " the rule of equity in carrying agreements into specific performance is well known ; and the court is not obliged to decree every agreement entered into, though for valuable consideration, in strictness of law, it depending on the circumstances. And undoubtedly, every agreement of which there should be a specific performance ought to be in writing, certain and fair in all its parts, and for adequate consideration ; and on all the circumstances of this case there is not sufficient ground to decree this." In *City of London vs. Nash*, 1 *Ves. Sr.* 12, Lord Hardwicke, in a case where a lessee, covenanting to rebuild some old houses, had rebuilt some and only repaired others, held, on a bill for specific performance that the covenant obliged the lessee to rebuild all ; but said, " the most material objection for the defendant and which has weight with me is, that the Court is not obliged to decree a specific performance, and will not, where it would be a hardship, as it would be here, i. e. to oblige the lessee to pull down what he had repaired at considerable expense." And this ground of hardship was carried even further in *Farrie vs. Brown*, cited 2 *Ves. Sr.* 304, where a defendant had contracted to convey a small estate which he held under a will upon condition that if he should sell it, one half the purchase money should go to his brother. Lord Hardwicke is reported to have said that the hardship alone of losing half the purchase money " was sufficient to determine the discretion of the Court not to interfere but to leave them to law." These latter cases are cited only to show how wide the discretion of the Court was then held. Whether we may consider the discretion to have been well exercised in all these cases is not the question. The same views have

been expressed by later English judges;—By Lord Eldon, in *White vs. Damon*, 7 *Ves. Jr.* 34 *; Matlock vs. Buller*, 10 *Ves. Jr.* 303 ; by Lord Erskine, in *Radcliffe vs. Warrington*, 12 *Ves. Jr.* 332 ; by Lord Redesdale, in *Harnett vs. Yielding*, 2 *S. & L.* 552; by V. Ch. Plumer, in *Howell vs. George*, 1 *Madd.* 17 : by Lord Brougham, in *Gould vs. Kemp*, 8 *Eng. Ch. R.* 9 *;* by V. Ch. Sir L. Shadwell, in *Kimberly vs. Jennings*, 9 *Eng. Ch. R.* 300, and *Talbot vs. Ford*, 36 *Eng. Ch. R.* 173 : by Lord Langdale M. R., in *Wedgewood vs. Adams*, 6 *Beav.* 600, (cited in 2 *White & Tudor's Lead. Cas. in Eq.*, *Part* 1, 556 ; and by V. Ch. Cranworth, in *Myers vs. Wilson*, 1 *Simons' N. S.*, 523 *;* 7 *Eng. L. & Eq. R.*, 69.

I have read, with care, these later decisions. The Courts have in them exercised the same free discretion in granting or refusing a specific performance according to the equities of the case which was asserted by the early judges, and especially by Lord Hardwicke. In some of these cases hardship and unreasonableness in the terms of the contract were alone held a sufficient objection. Thus, in *Kimberly vs. Jennings*, 9 *Eng. Ch. R.* 300, in a contract to serve the plaintiffs, who were factors and merchants, as a clerk for six years, the defendant stipulated that during the term he would not be engaged in any other employment. By another provision the plaintiffs reserved the power at any time to discharge him for certain causes, themselves being judges. They did discharge him, and afterward filed a bill to restrain him from engaging in the service of other factors and merchants. It was insisted by the plaintiffs that the clause restricting the defendant from entering into any other employment applied to him after his dismissal. The Court was doubtful as to the construction of the clause, but say, " supposing, however, the meaning of the agreement to be such, still it affords a strong reason against the interference of the court; for it would be what is commonly termed a hard bargain, and upon this, as one among other grounds, the Court refused to interfere. The authority of this decision is questioned by Lord St. Leonards in 13 *Eng. L. & E. R.* 258, but it was upon a wholly different point not at all touching the present ques-

tion.  So, in *Wedgewood* vs. *Adams* 6 *Beav.* 600 (cited in 2
*Wh. & T. Lead. Cas.* 556) where trustees who joined their
*cestuis que* trust in a contract of sale personally agreed to
exonerate the estate from incumbrances.   There were
considerable incumbrances, and it did not appear but that
the purchase money would be insufficient to discharge
them, in which case the trustees would be liable for the
deficiency.   Lord Langdale, deeming it an unreasonable
contract, refused a decree for specific performance, leav-
ing the plaintiffs to their action at law.  " The Court,"
said the Vice Chancellor, " must always have regard to
the circumstances of each case and see whether it is rea-
sonable that it should by its extraordinary jurisdiction in-
terfere and order a specific performance, knowing at the
time that if it abstain from so doing, a measure of damages
may be found and awarded in another Court.   Though
you cannot, " said he," define what may be considered un-
reasonable by way of general rule, you may very well in a
particular case come to a balance of inconvenience and
determine the propriety of leaving the plaintiff to his
legal remedy by recovery of damages.   In *Talbot* vs. *Ford*,
36 *Eng. Chanc. R.* 171,a lease of mines for a term of thirty-
one years contained a covenant that the lessor might *at any
time before the expiration of the lease*, upon notice, take at a
valuation, the machinery, stock in trade, and implements
used by the lessee in working the mines.   Upon a bill to
enforce this stipulation within five years after the date of
the lease, the V. C., Sir L. Shadwell, remarking upon the
unusual character and hardship of the lease says, " it
seems to me that it was by mere want of caution that this
covenant was worded as it is &c. ;  " but," he adds, be this
as it may, my opinion is, that it is so injurious and oppres-
sive to the lessee that this Court ought not to interfere for
purpose of giving effect to it; and therefore I shall not
grant the injunction.

It remains only to observe that the American Courts
have uniformly maintained the discretionary character of
the jurisdiction for specific performance.   The subject has
been thoroughly examined and authorities reviewed in the

leading case of Seymour vs. Delancey, 6 Johns. Ch. R. 222. The reversal of the Chancellor's decree in that case (3 Cow. 445) was on another point and does not touch this question. Concurring with the doctrine of that case are Torrey vs. Breck, 1 Green's Ch. R. 374, and Ely vs. Perrine, ib. 402 ; Meeker vs. Meeker, 16 Conn. 408 ; Tyson vs. Walls, 1 Md. Ch. Dec. 13; Leigh vs Crump, 1 Ired. Eq. R. 229; Clitherall vs. Ogilvie, 1 Dessans, 257, 263 ; Ward vs. Webber, 1 Wash. 279 ; Campbell vs. Spencer, 2. Binn. 133, and King vs. Hamilton, 4 Peters 328. Perhaps nowhere has this doctrine been more broadly accepted than by our Court of Errors and Appeals in Layton vs. Hudson, 5 Harring. 87, in which the Court, after stating certain objections to a specific performance in that case, conclude, " and generally when under the circumstances of the case the Court is unable to do exact justice between the parties, a specific performance will not be decreed, but the complainant will be left to his remedy at law." It might have been sufficient to rest the question upon that authority; but the scope of the argument has led to an examination of the history and grounds of the doctrine, and it seemed due to the learned counsel for the complainant, and to the importance of the subject, to state the result.

Gilpin, Chief Justice, delivered the opinion of the Court.

I am instructed by the court to say, that, after careful consideration of the case, we are of the opinion that the decree of the Chancellor should be affirmed.

This is a case in which the Chancellor is asked to exert the extraordinary power of a court of equity in decreeing the specific execution of a contract for the sale of land. And in reviewing the decision of the Chancellor, we are called upon to say whether he has erred in refusing to make such a decree. The question which was before the Chancellor, and which is now before this court is, whether the complainant has presented and established such a case, considered in all its aspects and consequences, as entitles him to a decree in his favor. It is very apparent that this case can not be decided strictly upon authority; indeed, few

applications for specific performance can, since the great
want of uniformity, consistency and harmony between the
decisions on the subject, and in the reasons assigned for
them, necessarily leaves each case to be governed and de-
cided pretty much upon its own special 'facts, or peculiar
merits. This seems to have been Lord Langdale's opinion
for he says, in *Wedgewood v. Adams*, 6 *Beav.* 605, "I con-
ceive the doctrine of the court to be this; that the court ·
exercises a discretion in cases of specific performance, and
directs a specific performance, unless it should be what is
called highly unreasonable to do so. What is more or less
reasonable is not a thing that you can define ; it must de-
pend upon the circumstances of each particular case. The
court, therefore, must always have regard to the circum-
stances of each case, and see whether it is reasonable that
it should,by its extraordinary jurisdiction,interfere and or-
der a specific performance, knowing at the time that, if it
abstains from so doing, a measure of damages may be
found and awarded in another court. Though you can not
define what may be considered unreasonable by way of
general rule, you may very well, in a particular case,come
to a balance of inconvenience and determine the propriety
of leaving the plaintiff to his legal remedy by recovery of
damages."

The general doctrine, therefore, of a court of equity is,
that specific performance is discretionary, especially in
those cases in which the party may have adequate com-
pensation at law in the shape of damages for the injury
actually sustained ; for in such cases the court will not feel
itself bound to interfere, but will leave him to pursue his
remedy in a court of law. In the language of Sir Wil-
liam Grant, in *Flint v. Brandon*, 8 *Ves.* 162 : "It is only
where the legal remedy is inadequate or defective, that it
becomes necessary for courts of equity to interfere." The
general principle is, perhaps,better stated by Sir J. Knight
Bruce V. C. in *Salisbury v. Hatcher*, 2 *Younge & Collyer*, 54,
that "where no legal invalidity affects the contract the per-
formance of it in this court, is matter of judicial discre-
tion." The exercise of the jurisdiction being discretion-

ary, and not compulsory, the Court may well, for reasons satisfactory to its conscience, refuse to exert its extraordinary power, and leave the complainant to make the most of his case before a Jury. In these cases the question is, not what the court must do, but rather what it may justly do under the circumstances. 2 *Story's Eq. sec.* 742 and 769 and cases there cited.

Assuming then, for the purposes of this case, that the receipt, or paper writing, which is set forth in the complainant's bill as the ground upon what he claims a decree, is a valid contract for the breach of which recovery can be had in a court of law, we propose to state briefly the rules and principles of law applicable to such an instrument, as recognized and enforced in courts of equity. This then, being the case of a contract or agreement in respect to the sale of land, it must be in writing according to the requirements of the statute of frauds. Now, it is a well settled general rule of Courts of Equity, that a party claiming specific performance, must show a complete written agreement; so complete and perfect indeed, as to manifest clearly to the Court the terms of the contract and the intention of the parties. And as the agreement is required by the statute to be in writing, the writing must speak for itself; and therefore you can no more supply defects in the agreement than you can supply the want of an agreement. The written agreement must show what the contract between the parties really is, and certainty being an essential element, the agreement must be certain in itself, or capable of being reduced to certainty by something else to which it refers, and which is thus made a part of it, so that the terms of the contract and the intention of the parties, can be ascertained with reasonable precision; for no material defect can be supplied by parol evidence. *Blagden v. Broadhead*, 12, *Ves.* 470. *Abeel v. Radcliff*, 13¾ *Johns.* 300. *Cinnan v. Cooke*, 1 *Sch. & Lefr.* 22·40. *Lord Walpole v. Lord Orford*, 3 *Ves.* 420. *Harnett v. Yielding*, 2 *Sch. & Lefr.* 556. *Brodie v. St. Paul*, 1 *Ves.* 326. *Lindsay v. Lynch*, 2 *Sch. & Lefr.* 67. Unless the contract between the parties is complete and certain in all its es-

sential parts, that is, unless the whole terms of the contract are clear and definitely ascertained, equity will not compel specific performance, for the Court can not, as already stated, supply any term that has not been agreed upon, since that would be rather to make than to execute an agreement. *Lord Ormond v. Anderson,* 2 *Ball & Beatty* 369. *Matthews v. Terwilliger,* 3 *Barb.* 50, 51. *Hammer & Danler v. McEldowney,* 46 *Penn.* 334. *Vanscotten v. Albright,* 1 *Halsted's Ch. Rep.* 467, 2 *Story's Eq. secs.* 767 & 764. Now, in what cases, and to what extent, the presence of fraud, or the fact of part performance, might affect, or vary the application of this general doctrine, it is not necessary to inquire, because there is no allegation or proof of fraud, nor is this a case of part performance.

Having thus briefly stated the doctrine of Courts of Equity, as we understand it, in regard to specific performance, let us now apply this doctrine to the case before us. The agreement which the complainant seeks to have specifically executed is in the form of a receipt, and is in these words : " Rec'd Aug. 20, '66 of D. C. Godwin ten dolls. in part payment of the purchase money of the farm and premises where I now live containing sixty six acres. Possession to be given on or before Jan. 1, 1867 clear of all taxes or incumbrances whatever, four thousand dolls. to be paid when possession given, the remainder in instalments of $500 each, payable with interest, annually, commencing Jan. 1, 1868, the said Godwin to have the privilege of anticipating the deferred payments.

Witness my hand and seal.

.  ' S. M. COLLINS   $\left\{ \text{SEAL} \right\}$

the whole purchase money to be eight thousand dollars.

S. M. COLLINS."

     $8000.

Now, it is to be observed that the relative position of the parties in respect to each other, and to the farm, has not changed in any respect whatever. It is true the complainant tendered himself ready to make the cash payment of four thousand dollars, in case the defendant and his wife would execute a deed conveying the farm to the complainant in fee simple, or in case the defendant alone would convey the same in fee with a covenant against incumbrances. He also tendered to the defendant a bond and mortgage for securing the deferred payments. These offers, however, were rejected by the defendant  The complainant did not go into possession of the property, nor has he made any improvements, nor expended any money on it ; nor has he in any respect, so far as we know, been led in consequence of the agreement, to do any thing which has resulted to his detriment. And, therefore, the *statu quo* remains just as it was immediately after the signing of the agreement.  The case then, as we apprehend it, stands upon the naked agreement alone.  Now, it must be remembered, we are called to decree the specific execution of the agreement as it stands written in the receipt.  But before we can do this, it is necessary we should ascertain, if possible, with reasonable certainty, at least, the terms agreed upon.  If these are uncertain, doubtful, or inequitable, the court will feel itself bound to withhold a decree. Now, the first thing that strikes us upon reading the agreement, is the fact, that, whilst it provides for transferring the possession, it contains no stipulation whatever for a conveyance of the property.  Assuming, however, that the defendant was bound to convey at some time, still the question arises, as to when, or at what time the conveyance was to be made ?  Was he bound to do so immediately upon payment of the four thousand dollars ; or might he not legally and justly refuse to convey until all the instalments with their interest had been paid ?  As the agreement is totally silent upon the subject, we are driven to construction, if not to conjecture.  What then is the true meaning of this part of the agreement ?  Is not the

8

latter construction quite as reasonable and equitable as the former ?   Then, as to the payment of the interest on the instalments.   What was the understanding of the parties, and what the terms of the contract ?   The agreement says " the remainder in instalments of $500 each, payable with interest annually."   Now what does this clause mean ?   Does it mean that the interest on all the instalments shall be payable annually ?   Or does it mean that only the interest on the particular instalment then falling due shall be payable, leaving the interest on the other instalments to accumulate until such times as said instalments should respectively become due and payable.   If this latter construction be the true one, then the interest on the whole balance of indebtedness would not be payable annually ; on the contrary, it would be payable only on the five hundred dollars then due ; so that on the last instalment the interest would remain unpaid for a period of eight years, and on the other instalments for the period of time for which they respectively had to run before arriving at   maturity.   And although this latter construction would seem to agree with the reading of the clause, yet it is hardly reasonable to believe that such was the understanding of the defendant.   Surely then, there would seem to be ambiguity and uncertainty enough as to the terms or meaning of the agreement on these points, and, of course, as to the understanding of the parties as indicated by the agreement to cause the court to pause and reflect whether it is not the dictate of a wise discretion to leave the complainant to his legal remedy.   *Parkhurst v. Van Courtland*, 1 *Johns. Ch.* 275. *Parrish v. Coons, Parson's Eq. Ca.* 79.   *Colson* vs. *Thompson*, 2 *Wheat.* 341.   *Abeel v. Radcliff*, 13 *Johns.* 297. *Hammer* vs. *McEldowney*, 46. *Penn. State R.* 336.

The exercise of a sound discretion according to the circumstances of each particular case, lies at the very foundation of this extraordinary jurisdiction, and the court, though not exempt from the general rules and principles of equity in granting or withholding relief,uniformly acts with greater freedom  than when exercising its ordinary powers.

But the most remarkable thing in regard to the agreement is the fact that it contains no provision for securing the balance of the purchase money, a provision which above all others, it should have contained, if, as claimed by the complainant, the defendant was bound to execute a conveyance of the farm immediately upon the payment of the first sum of four thousand dollars. The agreement states merely that the "remainder," meaning the balance of the purchase money, should be payable in annual instalments of five hundred dollars each with interest commencing on the first of January 1868, and there leaves the matter without saying more, except that the complainant might anticipate the deferred payments. How do we know that either of the parties at the time the agreement was signed, on the 20th of August 1866, contemplated the the execution of a conveyance of the farm immediately upon payment of the first sum of four thousand dollars? There certainly is nothing in the terms of the agreement itself expressly requiring it. Moreover, the defendant must have known that if he conveyed the property to the complainant without taking security, the payment of the balance of the purchase money would depend solely upon the personal honesty and responsibility of the latter; but there is nothing in the agreement to warrant the supposition that he was willing to accept these as his only security. Now, in endeavoring to arrive at a reasonable interpretation of this agreement with proper regard to the respective equities of the parties to it, let us, for a moment, suppose that the complainant had, in fact, paid the four thousand dollars, and had gone into possession of the farm under and according to the express terms of the agreement.—— What, it may be asked, would then have been the relative positions and rights of the parties? The complainant having made the payment and being in possession, his interest in the farm would have been fully protected on the ground of part performance; and upon payment of the balance of purchase money, he could undoubtedly have compelled the defendant by the decree of a court of equity

to convey the land to him in fee.   So that, in fact, having the equitable, he would have run no risk as to ultimately obtaining a good legal title.   But suppose the defendant had conveyed the land to the complainant on the first of January 1867, upon payment of the four thousand dollars, leaving the deferred payments unsecured, would not the payment of the balance of the purchase money have been left at risk and in peril?   We certainly think so.   Well then, if such would have been the inevitable result, would it have been just or equitable in the Chancellor by his decree to have placed the balance of the purchase money precisely in this predicament?

It is contended, however, that the doctrine of the vendor's lien for unpaid purchase money affords the defendant ample security.   We do not think so.   At best, it would be but a very imperfect and inadequate security; for the purchaser having the title to the land, could at any time sell and convey it away, or encumber it, and the original vendor could not follow it into the hands of an innocent purchaser for value, nor could the lien be enforced against a *bona fide* creditor, without notice.   *Bayley v. Greenleaf*, 6 *Wheat.* 46.   *Budd v. Busti and Vanderkemp et al.*, 1 *Harrington*, 69.—

Again, it is argued that the defence relied on as arising from the omission of any provision in the agreement for securing the deferred payments, is met and answered by the fact that the complainant tendered himself ready to give security for the same by bond and mortgage.   But the answer to this argument is, we think, quite obvious and it is this:—A court of equity cannot, any more than a court of law make a contract for the parties ; nor, in the absence of fraud, or part performance, has it any right to supply an omission or impose terms.   On the contrary, it can only decree specific performance according to the written terms of the agreement.   In such a case the court has no more right to say that the defendant shall accept a mortgage than that the complainant shall give one ; for neither the one, nor the other is mentioned in

the agreement. The doctrine of courts of equity on this point can not be better stated than it is in the language of Lord Manners in *Lord Ormond v. Anderson*, 2 *Ball & Beatty* 369, where he says—" The jurisdiction of this Court is to compel the specific performance of a contract between the parties, but the contract must be complete; the court cannot supply any term that has not been agreed upon; for that would be to make, and not to execute an agreement, a jurisdiction which this Court can never assume." And Sir William Grant, in *Milnes v. Gery*, 14 *Ves.* 407, in referring to the extent to which some of the cases had gone in decreeing specific performance, says " Perhaps some of those cases may be thought rather to require defence for the length to which they have gone, than to furnish a justification for still further extending the discretionary power of which they are instances. The court never professes to bind a man to any agreement, except that which he has made; but sometimes holds the agreement which it executes, and that which he has made to be substantially the same; when to common understandings there is a very perceptible difference between them." Lords Thurlow, Kenyon, Eldon, Erskine, Manning, Sir William Grant, and others considered that those cases ought not to be followed. *Stewart v. Allison*, 1 *Meriv.* 32. *Halsey v. Grant*, 13 *Ves.* 73. *Binks v. Lord Rokeby*, 2 *Swan.* 225. *Ormond v. Anderson*, 2 *Ball & Beatty*, 369. So that the authority of the old class of cases on this head may be considered as greatly shaken, if not entirely overruled.

Considering then, the uncertain character and meaning of the agreement,—the want of definiteness in its terms,— its manifest looseness and incompleteness, and especially— the absence of any provision for securing the deferred payments; and considering that the necessary effect of a decree for specific performance would be to place the balance of the purchase money in jeopardy, we are of the opinion that the Chancellor did right under all the circumstances of the case to dismiss the complainant's bill.

Let the order and decree of the Chancellor be affirmed in all respects.