[Civ. No. 8234. Second Appellate District, Division Two.—May 16, 1934.]

## PAUL E. KRESSLY, Respondent, v. DISTRICT BOND COMPANY (a Corporation), Appellant.

Dryer, Castle & Richards for Appellant.

Chase, Barnes & Chase for Respondent.

SCOTT, J., *pro tem.*—Defendant appeals from a judgment for plaintiff in an action for damages for breach of contract.

Prior to January 18, 1923, appellant corporation, being engaged in the business of buying and selling bonds for investment purposes, purchased a number of bonds of the Sunnyside Irrigation District of Washington County, Idaho, and offered same to respondent for sale. About January 18, 1923, respondent purchased from appellant four one thousand dollar six per cent bonds of said district maturing February 1, 1933, interest payable semi-annually on February 1st and August 1st, paying therefor $3,906.77. On

February 1, 1923, twelve days after they were purchased by respondent, said bonds defaulted in payment of interest.

The trial court found that appellant made certain representations to respondent to induce him to purchase said bonds, which were untrue and not warranted by the information of appellant, but which were relied on by respondent, and that in truth said bonds were then worthless; that appellant offered, if respondent would not rescind the sale or litigate any claim therefor, to repay respondent, on or before the due date of the bonds, the purchase price and to pay the interest when due; that thereupon respondent accepted said offer and took no legal action; that from February 1, 1923, to and including February 1, 1929, appellant paid the interest coupons when due; that appellant refused to pay the interest coupons when due on August 1, 1929, and denied the existence of an agreement, notifying respondent that it would not pay either the price of said bonds or interest at any time. On February 25, 1930, this action was instituted and judgment for respondent for the purchase price of said bonds and accrued interest was thereafter rendered.

Appellant contends that the evidence does not support the findings either as to the existence of an agreement to repay respondent's loss or as to any consideration for such an agreement; that the action was prematurely brought, and that the agreement, if any, was barred by the statute of frauds.

■ There is substantial evidence to support the findings of the trial court as to the existence of an agreement and a consideration therefor. From the evidence it appears that respondent, after the default in the interest payment on the bonds twelve days following his purchase thereof, demanded that appellant take the bonds back and return his money; that thereupon various officials of the corporation told him he "had nothing to fear about the bonds", that the District Bond Company would protect him and the company "would take care of the interest and also of the principal of these bonds", that he "would not have anything to worry about, that the District Bond Company would take care of those bonds", and that "the District Bond Company is paying your interest when the coupons are due and we will also take care of the principal". B. L.

Hames, who was sales manager and later vice-president of the corporation, and who sold the bonds to respondent, testified in effect that the bonds were acquired in a trade for some bonds "we wanted to get rid of" and were sold to respondent on representations by Hames based on a descriptive circular (which was introduced in evidence); that the bonds were then found to be "in trouble", so the company cashed the interest coupons then due and told respondent "the thing would be rectified right away" or the bonds would be taken up; that respondent "was very firm if he didn't get some new bonds he would take action to protect his interests", and Hames assured him "that the directors had acted and had said if those bonds were not made good after a reasonable time I had orders to take those bonds up". Hames further testified that he tried to get respondent's money for him from the company, but that he was unable to do so because he "wasn't the boss", and that Harry Lee Martin, a director and executive of the company, told him that "Kressly has nothing to worry about; we are paying his interest, and by the time the bonds are due we will pay it"; that in the meantime "it is six per cent money and is cheap for us".

The evidence supports the finding that there was an offer of appellant to pay the interest and repay the principal to respondent if he would not rescind the purchase or institute legal proceedings against it. The conduct and words of respondent, and the inferences reasonably drawn therefrom by the trial court, support a finding that there was an immediate consent by respondent to this offer. In addition to the conversations referred to, the interest coupons were at once presented to appellant for payment and were paid by it, and in lieu of instituting hostile legal proceedings respondent continued as a valuable friend and customer of appellant, investing seventy-five or a hundred thousand dollars through it, but made repeated demands that appellant carry out its part of the contract to make good the bonds.

"The sufficiency of the evidence to establish a given fact, even where the law requires proof of the fact to be clear and convincing, is primarily a question for the trial court; and if there be substantial evidence to support the conclusion reached below the finding is not open to review on appeal." (*Steinberger* v. *Young,* 175 Cal. 81, 84 [165 Pac.

432].) The consideration for the agreement was sufficient if respondent withheld legal action to recover his money or withheld the exercise of his right to rescind the contract on the ground of misrepresentation. A benefit to appellant or a detriment to respondent was sufficient to support the agreement. As the court said in *Fairchild* v. *Cartwright*, 39 Cal. App. 118, 121 [178 Pac. 333]: "The appellant wanted to avoid trouble, lawsuits and unenviable notoriety in reference to the company in which he had such an interest, and the consideration was therefore beneficial to him. The compromise of even a doubtful right is a sufficient foundation for a promise to pay money."

 The record does not support appellant's contention that the action was prematurely brought. It does not appear that the parties agreed that the exchange of the bonds or payment of the principal should be deferred until the due date of the bonds, but it is not disputed that prior to the commencement of the action there had been the non-payment of two interest installments, the failure of appellant to issue new bonds and the express repudiation by it of any liability to pay either interest or principal to respondent. Where there has been a repudiation and breach of a contract, an action by the aggrieved party to enforce his rights is not premature. (6 Cal. Jur. 459; *Walker* v. *Harbor Business Blocks Co.*, 181 Cal. 773 [186 Pac. 356].)

 Whether the agreement is invalid under the statute of frauds (Civ. Code, sec. 1624), as urged by appellant, may be determined by the test laid down in *McKeany* v. *Black*, 117 Cal. 587, 592 [49 Pac. 710], as follows: "If the contract *by its terms* is not to be performed within a year it is void; but if it *may* 'by its terms' be performed within a year it is not, even though it may not be performed within that time." "The statute does not declare void a contract which may not be performed within a year or which is not likely to be performed within that period. It includes only agreements which, fairly and reasonably interpreted, do not admit of a valid execution within the year." (*Hellings* v. *Wright*, 29 Cal. App. 649, 655 [156 Pac. 365].) It cannot be said that the agreement of the parties herein was not to be performed within the year, nor that it was their intention that it should not be so performed. It might reasonably be inferred that the delay beyond that time was

allowed by respondent due to his confidence in appellant's integrity and in the latter's repeated assurances and promises to carry out its agreement.

The trial court found upon ample evidence that respondent changed his position to his detriment in reliance upon appellant's agreement and promises, giving up his right to rescind and his action for fraud. Appellant is therefore estopped to set up the statute of frauds to defeat respondent's right to recover in this action. "It is a general equitable principle . . . 'that he who by his language or conduct leads another to do what he would not otherwise have done shall not subject such person to loss or injury by disappointing the expectations upon which he acted. Such a change of position is sternly forbidden. It involves fraud and falsehood and the law abhors both.'" (*Seymour* v. *Oelrichs*, 156 Cal. 782, 795 [106 Pac. 88, 134 Am. St. Rep. 154]; *Fleming* v. *Dolfin*, 214 Cal. 269 [4 Pac. (2d) 776, 78 A. L. R. 585]; *Needham* v. *Abbot Kinney Co.*, 217 Cal. 72 [17 Pac. (2d) 109].)

The judgment is affirmed.

Stephens, P. J., and Desmond, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 12, 1934.