[Civ. No. 2792.   Fourth Dist.   Nov. 26, 1941.]

STELLA M. REHART, Respondent, v. WINFRED W. KLOSSNER, Individually and as Trustee, Appellant.

Alfred Siemon and Bennett Siemon for Appellant.

J. A. Galvin and Henry L. Knoop for Respondent.

MARKS, J.—This is an appeal from a judgment quieting plaintiff's title to real property in Ventura County. This is a companion case to *Rehart et al.* v. *Klossner, ante,* p. 40, the opinion in which is this day filed, but different property is involved.

Under date of August 15, 1932, R. L. Rehart and Stella M. Rehart, husband and wife, entered into an oil lease with John D. Young on the property in question. Certain terms

of the lease were modified by a contract between the same parties dated June 1st, 1933. We will summarize the terms of the two instruments as though the amendatory clauses had been contained in the original lease.

Subsequently, R. L. Rehart died and his interest in the leased property passed to his widow, the plaintiff. By assignment Young's interest under the lease passed to defendant.

The lease was for twenty years and as long thereafter as oil or gas be produced in paying quantities from the leased land.

The lease provided that it should terminate on June 10, 1933, or within extension periods provided for in the lease, unless the lessee shall have commenced drilling of a well for oil or gas on the leased land during any of such periods and prosecuted the drilling thereof with due diligence until a depth of 5000 feet had been reached, unless oil or gas be found in paying quantities at a lesser depth.

It was further provided that the lessee might secure an extension of the time for commencement of the drilling until July 10, 1933, by paying the lessors $175 on or before June 10, 1933, and a second extension to August 10, 1933, by paying the lessors $175 on or before July 10, 1933. It was further agreed that the lessee might secure another extension of the time for commencement of drilling for three months by paying the lessors $150 on or before August 10, 1933, and additional three-month extensions by paying the lessors $150 on the tenth day of every third month in advance until August 10, 1938, but not thereafter.

It is therefore clear that the drilling of the first well must have been commenced on or before August 10, 1938, or the lease would be terminated without action on the part of the lessors unless drilling within that period had been excused by some other provision of the lease.

Defendant made payments so that the commencement of the drilling of the first well was extended to May 10, 1938. The last payment was made and accepted on March 11, 1938. No drilling was ever done on the leased premises.

On August 24, 1938, plaintiff notified defendant "that payments for rental have not been kept up, and that drilling of a well was not commenced within the required time"; that the lease required the lessee to quitclaim the property and that "you are hereby notified, that, if this quit claim

deed is not delivered to me, within thirty days, I shall take action to recover the same, at your expense as provided by this lease.''

Plaintiff failed to give the quitclaim deed, made no further payments and did not commence the drilling of a well on the leased property. This action to quiet title was filed on February 24, 1939.

■ Defendant urges that he was relieved from the obligation to commence drilling a well and from making the payments of money under a paragraph of the lease which provided that ''the obligations imposed upon the Lessee may be suspended so long as Lessee's compliance is prevented by the elements . . . ''; and his evidence that a great storm had washed out all roads on March 1, 1938, so that he could not get onto the leased property until the end of the year 1938, or until April, 1939.

The evidence on the effect of the storm is conflicting. A witness for plaintiff testified as follows:

''I am familiar with the location of the Rehart property, and have been employed in the oil fields around Fillmore for about 30 years. At one time I worked for Mr. Klossner on the Turner property, which is north of and adjoins the Rehart property on the south. I was employed in that district in 1938. I remember the rain storm in March, 1938. As a result of that storm the road slid in pretty bad. It was closed six weeks for automobiles. It was opened to my place before the first of May. It was probably five or six months that there was no trucking over it. After the flood, one could start trucking in there in August, 1938. Since that time trucks and heavy equipment could have been hauled from Fillmore onto the Rehart property.''

This evidence justifies the conclusion that the effects of the storm did not prevent defendant from starting drilling on the property at least by September 1, 1938.

The obligation fixed on defendant was to commence drilling a well on the property on or before June 10, 1933. He was given the option of extending the period for commencing drilling during the limited periods already mentioned by making the required cash payments at the times mentioned. The lease placed no obligation on him to make these payments.

If we assume that the results of the storm of March 1, 1938, were sufficient to suspend the obligation of drilling, then the drilling requirements of the lease again came into full force and effect when the effects of the storm were overcome, and it then became defendant's duty to commence drilling the well. Under the evidence this obligation arose not later than September 1, 1938, or a reasonable time thereafter. He did not tender plaintiff a delay payment on or after that date, if under the terms of the lease he could have done so. He did not commence the drilling of a well on the leased property. He did nothing during the five months and twenty-four days intervening before the suit was filed. Under these facts, the lease was terminated under its clear terms before February 24, 1939.

To escape this conclusion, defendant urges that he was not in default on August 24, 1938, when plaintiff gave him the notice already mentioned; that as he was not in default and as plaintiff repudiated the lease, he was relieved from all his obligations of performance under the lease until plaintiff withdrew her notice. In support of this argument he cites sections 1440 and 1511 of the Civil Code and 6 Cal. Jur. 458, Contracts, sec. 274.

The rule contended for by defendant is better stated in *Felton Chemical Co.* v. *Superior Court*, 33 Cal. App. (2d) 622 [92 Pac. (2d) 684], as follows [p. 627]:

"Performance by the party not in fault is always excused by the wrongful refusal to perform by the other party. The rights of the party in fault come to an end, but the contract is nevertheless kept in force so as to protect the rights of the innocent party and to enforce the obligations of the delinquent party. (Civ. Code, secs. 1511, 1512, 1514.)"

The rights of the innocent party, where a contract has been repudiated by the other party, is thus clearly stated in *O'Connell* v. *Federal Outfitting Co.*, 5 Cal. App. (2d) 327 [332] [42 Pac. (2d) 1070]:

"When a party to a contract has thus been injured by its breach he may pursue any of three remedies. 'He may treat the contract as rescinded and may recover upon a *quantum meruit* so far as he has performed; or he may keep the contract alive, for the benefit of both parties, being at all times ready and able to perform; or, third, he may treat the repudiation as putting an end to the contract for all purposes of

performance, and sue for the profits he would have realized if he had not been prevented from performing. In this last case the contract would be continued in force for that purpose.' (*McConnell* v. *Corona City Water Co.,* 149 Cal. 60, 64 [85 Pac. 929, 930, 8 L. R. A. (N. S.) 1171]; *Sobelman* v. *Maier,* 203 Cal. 1, 8 [262 Pac. 1087]; 6 Cal. Jur., p. 460, sec. 274.)'' (See also *Richardson* v. *Davis,* 116 Cal. App. 388 [2 Pac. (2d) 860]; *Kressly* v. *District Bond Co.,* 138 Cal. App. 565 [32 Pac. (2d) 1112]; *King Features Syndicate* v. *K M T R, etc.,* 29 Cal. App. (2d) 247 [84 Pac. (2d) 322].)

It is clear that defendant did not bring himself within any of these three rules. He did not treat the contract as rescinded and attempt to recover on the *quantum meruit,* assuming he could do so. He did not treat the repudiation as putting an end to the contract and seek to recover his profits, if any, again assuming he could do so. He did not keep the contract alive for the benefit of both parties, and it is rather clear that he was never in a position to perform under it, but only hoped that he could secure another to perform for him. He simply did nothing and in doing nothing lost his right to perform, assuming that his rights were not terminated prior to September 1, 1938.

We have assumed but not held that the letter from plaintiff to defendant of August 24, 1938, amounted to an absolute and final renunciation and repudiation of the contract by plaintiff, which is necessary in order to relieve the other party, and is not the expression of an intent not to be bound by it, which is not sufficient to establish repudiation of a contract by a party to it. (*Atkinson* v. *District Bond Co.,* 5 Cal. App. (2d) 738 [43 Pac. (2d) 867]; *Tomboy Gold & Copper Co.* v. *Marks,* 185 Cal. 336 [197 Pac. 94].)

The judgment is affirmed.

Barnard, P. J., and West, J. *pro tem.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 21, 1942.