CONRAD KELLER *v.* THE PRESIDENT, DIRECTORS AND COMPANY OF THE FARMERS BANK OF THE STATE OF DELAWARE, a corporation of the State of Delaware.

(*February* 2, 1942.)

RODNEY, J., sitting.

*James R. Morford* (of Marvel and Morford) for plaintiff.

*Aaron Finger* (of Richards, Layton and Finger) for defendant.

Superior Court for New Castle County, No. 23, May Term, 1940.

 Rodney, J., held "that it is within the sound discretion of a trial court to allow testimony from a summary rather than to compel a party to offer in evidence voluminous records and to trace numerous individual items from many volumes. 4 *Wigmore* (*3rd Edition*), *Sec.* 1230; *Curry v. Charles Warner Co.*, 2 *Marv.* 98, 42 *A.* 425; *Aetna Casualty & Surety Co. v. Mayor and Council of Wilmington*, 17 *Del. Ch.* 285, 157 *A.* 208. In some cases the witness has been allowed to refresh his recollection from the summary, and in others the summary has been admitted into evidence. For either course to be pursued it is required (1) that the volumes or records from which the summary is made are either in evidence or present in Court, or available, under order of the Court, for any examination that the opposing side might see fit to make, and (2) that the person or persons by whom the summary is made is available for cross examination by the adverse party. The paper, however, sought to be admitted as a summary of voluminous records, and admissible on that ground, must contain only the items or summary of items shown by the records themselves. A party cannot, under the guise of a summary of voluminous records offer in evidence a paper containing matter foreign to the records purported to be summarized, and which may, in written form, contain the contentions of the party, drawn not only from the particular records themselves, but as well from other records or evidence."

The summary was excluded but, being redrawn, was admitted without objection.

At the conclusion of the testimony the defendant prayed that the jury be directed to return a verdict for the defendant, on the ground that every item of the claim of the plaintiff was barred by the Statute of Limitations.

In granting this prayer, Rodney, J., charged the jury, in part, as follows:

This suit is brought by Conrad Keller against the Farmers Bank of the State of Delaware, and the amount claimed by the plaintiff is a large one. It involves not only items of the bank account but also credits of numerous loan transactions and applications from numerous foreclosures and sales of property and of farm management. In the view that I have taken of the matter it is not now necessary to review the various transactions. It is all important to have attention drawn to the undisputed fact that all of the transactions in controversy or as to which any claim is made arose and were completed during the years 1924 to 1931.

The form of action in this case is called assumpsit and the action was brought January 18, 1940. One of the defenses relied upon is the Statute of Limitations of this State, and this statute is found as Sec. 5129 of the Revised Code of 1935, and so far as here material reads: "no action * * * of assumpsit * * * shall be brought after the expiration of three years from the accruing of the cause of such action."

Before considering the effect of the Act some passing attention may be given to its origin and purpose. In *Reybold v. Parker*, 6 *Houst.* 544, the history of the Act is set forth, although the date of the first English Act is erroneously stated as 1683, instead of 1623. In the cited case it is shown that our own Delaware Acts may be easily traced to 1742, and the exact language of the present Act was adopted January 30, 1829 (Vol. 7, page 267).

In *Boston v. Bradley's Ex'r.*, 4 *Harr.* 524, it is said that: "statutes of limitation are founded in wisdom and sound policy. They have been termed statutes of repose, and are regarded as highly beneficial. They proceed

on the principle, that it is to the interest of the public to discourage the litigation of old or stale demands; and are designed not merely to raise a presumption of payment, but to afford a security against the prosecution of claims where, from lapse of time, the circumstances showing the true nature or state of the transaction, may have been forgotten; or may be incapable of explanation by reason of the uncertainty of human testimony, the death or removal of witnesses, or the loss of receipts, vouchers, or other papers."

It is therefore certain that under our statute law the action was barred after three years from the accruing of the cause of action, and it becomes most material to see when this cause of action accrued.

■ Statutes of Limitation begin to run when proper parties are in existence capable of suing and being sued, and a cause of action exists capable of being sued on forthwith.

■■ The ordinary relation of a bank and its depositor is that of debtor and creditor, but some distinction is to be drawn between this and other similar relations. In the absence of express understanding the money is deposited subject to being paid on demand. A deposit can not be made on one day and then a suit immediately brought for its recovery without a demand or something equivalent thereto, and a refusal of payment or its equivalent. *Johnson v. Farmers' Bank*, 1 *Harr.* 117, 119.

Here is where the crucial questions of the present case arise. It is the right of a depositor to know periodically the state of his account, and to have returned to him the cancelled checks or other evidences of payment by the bank from his account, so that he may test the accuracy of the account and the correctness of the balance. When the bank has complied with this duty there is raised the cor-

relative duty on the part of the depositor to examine the account and vouchers and to make any objection thereto within a reasonable time.

The number of settlements of the account and statements furnished to the depositor (Keller) is in dispute. The bank contends that between the years 1925 and 1932 the "general" account was balanced 42 times and statements furnished, and the "special" account some 21 times. The plaintiff disputes these figures and contends that not nearly this number of statements were furnished. There is, however, in evidence and produced by the plaintiff himself, two statements which have controlling bearing in this case.

A statement of the "general" account concededly was sent the depositor and received by him, showing a balance due the depositor on Sept. 19, 1931, of $4.80. He subsequently drew a check for $4.85, which being refused payment he, on Sept. 9, 1932, drew a check for $4.80, and the statement sent to Keller showed no subsequent balance whatever.

A statement of the "special" account also concededly was sent the depositor on Dec. 18, 1928, showing a balance of 29 cents, and no further deposits or checks in any account bearing this name appear until November, 1937.

Of course when Keller received these statements he did not have to agree with their accuracy. He could entirely disagree and press any claim he might have for a greater balance. Bearing in mind that all of his claim is for items originating from 1924 to 1931, the question is presented as to whether or not the statements of the bank plainly indicated the position of the bank as to the state of the balance due the depositor so as to start the operation of the Statute of Limitations.

I am clearly of the opinion that Keller did not have to accept as accurate the balance as stated by the bank and that he had three years from such time (as provided by the Statute of Limitations) to show the inaccuracy of the statement or any mistake by the bank.

I am equally of the opinion that any action to be taken by Keller was required by the express provisions of the statute to be taken within three years from the receipt of the statement furnished by the bank and setting forth its contention as to the balance due.

This view is greatly strengthened by the fact that from 1933 Keller was represented by two prominent members of the Bar. On July 3, 1935, they wrote to the bank explicitly making practically every demand made in this present suit, which demands were refused.

A summary of the pertinent legal principle is found in 5 Zollman on Banks and Banking, Perm. Ed., § 3388, where it is said:

"Rendering a statement to a customer showing the balance claimed by the bank is equivalent to a notice that any claim in excess of that amount will not be paid, and as to such excess the statute of limitations begins to run at once, and the depositor may sue without any subsequent notice."

To the same effect are *Masonic Benefit Ass'n v. First State Bank,* 99 *Miss.* 610, 55 *So.* 408; *Detroit Piston Ring Co. v. Wayne County, etc., Bank,* 252 *Mich.* 163, 233 *N. W.* 185, 189, 75 *A. L. R.* 1273; *Kansas City Title & Trust Co. v. Fourth National Bank,* 135 *Kan.* 414, 10 *P.* 2d 896, 902, 87 *A. L. R.* 334; *Union Tool Co. v. Farmers' & Merchants' National Bank,* 192 *Cal.* 40, 218 *P.* 424, 28 *A. L. R.* 1417; *Glassell Development Co. v. Citizens' National Bank,* 191

*Cal.* 375, 216 *P.* 1012, 28 *A. L. R.* 1427; *Penn Bank's Estate,* 152 *Pa.* 65, 25 *A.* 310; and *Lumpkins v. First National Bank of Mt. Hope,* 153 *Kan.* 163, 109 *P. 2d* 66. See, also, note in 87 A. L. R. 344.

The foregoing has considered the claims of the plaintiff as connected with his "general" account. The plaintiff had also a "special" account which he testified was for his deposits of special funds to be used by him to decrease his indebtedness. The last settlement sheet of this account shows a balance of 29 cents, as of December 18, 1928, but some of the items of claim did not originate until 1931. There is, however, in evidence a duplicate pass book for this "special" account, furnished by the defendant to the plaintiff, and produced by him. This shows a balance in said account of 29 cents as of May 4, 1932, and this pass book makes applicable to the "special" account the same reasoning applied to the General account.

Owing to the fact that every item of the claim of the plaintiff originated and was complete during or before the year 1931 and, according to the plaintiff's contention should then have appeared in the bank balances as of that time, and owing to the further fact that the bank statements and pass book at least as of 1932 showed the bank's contention as to these balances, it is clear that each item is barred by the Statute of Limitations.

A Court never desires to take from a jury any question of fact that has been submitted, and to order a verdict for the defendant, but a clear duty rests upon the Court when it is convinced that, under the law, no verdict for the plaintiff could be justified. It becomes the duty then to order a directed verdict.

The prayer for a directed verdict must be granted.