Samuel **ABRAMSON**, Plaintiff,

v.

**DELROSE, Inc.**, a Delaware Corporation, Edward Bernhardt, Nellie Bernhardt, Lena Berman Rock and Louis Rock, Defendants.

Civ. A. No. 1635.

United States District Court
D. Delaware.

May 25, 1955.

James R. Morford and George L. Sands, (of Morford & Bennethum), Wilmington, Del., for plaintiff.

Samuel F. Keil and Harold Shaffer, (of Keil & Keil), and Clair J. Killoran and Clyde M. England, (of Killoran & Van Brunt), Wilmington, Del., for defendants.

RODNEY, District Judge.

This is a motion for summary judgment as to several distinct causes of action. It appears that the defendants, or some of them, owned a piece of land in Wilmington upon which they desired to erect an apartment house. In May 1950, Bernhardt, for the defendants, engaged the plaintiff, an architect or engineer, to prepare the plans and ascertain the cost of the project. These plans were prepared by September 1950 and the cost subsequently ascertained as over $639,-000. It was contemplated that construction should start about January 1, 1951 and require more than a year for completion. Difficulties in financing the project developed and the apartment house was never built. Revised bids were obtained and a sale of the land, with the plans, as a "package deal" was attempted but not consummated.

The agreement between the parties was not in writing and was alleged to contemplate an architect's fee of 5% of the cost of construction.

The complaint alleges four causes of action only three of which are here considered and which may briefly be stated as (1) Breach of Contract, (2) Quantum Meruit, and (4) Reliance by plaintiff upon an alleged misrepresentation of financial condition or report. These causes of action will be considered in order.

1. The first cause of action is based on an alleged breach of contract of the parol agreement of employment. It is conceded that the contract was not to be performed within one year from the making thereof and the answer sets out the invalidity of the action under the Delaware Statute of Frauds, 6 Del.C. § 2714(a), as set out in the footnote.[1]

The plaintiff relies upon three separate writings as constituting a compliance with the requirements of the Stat-

1. "No action shall be brought to charge any person upon any agreement * * * that is not to be performed within the space of one year from the making thereof * * * unless the contract is reduced to writing, or some memorandum, or notes thereof, are signed by the party to be charged therewith, or some other person thereunto by him lawfully authorized in writing * * *."

ute. Before considering these, however, initial notice will be taken of a contention of the plaintiff that the defendants are equitably estopped from pleading the Statute of Frauds. This order of consideration is adopted because, if the defendants are estopped from pleading the defense of the Statute, then consideration of compliance with the Statute is largely obviated.

■ The plaintiff contends that 75% of the architect's services were rendered in preparing the plans and obtaining bids or estimates and that these services continued over a long period of time. He contends that the action of the defendants in allowing the plaintiff to continue his activities to such an extent would make it unjust and unconscionable to say that the contract was not in writing as provided by the Statute. The plaintiff relies upon the authorities cited in the footnote.[2] These cases will receive no individual comment. I am of the opinion that here no estoppel exists. It is clear that part performance, as such, does not apply to a case such as that under consideration, it not being a contract concerning the sale of land.[3] This is not a case where one party had fully and completely performed his contract and nothing remained but the payment of money by the other party.[4] No fraud with reference to the nature of the contract has been alleged or shown and no misrepresentation at the inception of the contract. While circumstances may exist making the pleading of the Statute of Frauds inequitable, no such facts are here apparent.

"A mere refusal to perform an oral agreement within the statute, however, is not such fraud as will justify a court in disregarding the statute even though it results in hardship to the plaintiff. His remedy will be limited to quasi contractual actions * * *.[5]"

The defendants, under the facts here present, are not estopped from pleading the Statute. Any other result would necessarily imply that any party to an oral contract, not concerning the sale of lands, who had performed a large portion of his contractual obligation was immune from the operation of the Statute of Frauds.

■ As to compliance with the Statute. The plaintiff concedes that the contract was not to be performed within the space of one year and that the original agreement was oral. The plaintiff contends, however, that three several writings, when considered together, show compliance with the Statute. Before considering the memoranda, certain general principles should be kept in mind. It is clear that a memorandum, sufficient under the Statute, need not be in one writing but may consist of several writings only one of which need be signed. The requirements of the writings are to some extent shown in Hull v. Brandywine Fibre Products Co.[6] It is not necessary that the writing or writings be made with the intent to create a sufficient memorandum under the Statute [7] but the writings must have that effect. The memorandum must speak largely for itself and disclose certain

2. Interstate Co. v. Bry-Block Mercantile Co., D.C., 30 F.2d 172, 177; Seymour v. Oelrichs, 156 Cal. 782, 106 P. 88; Vogel v. Shaw, 42 Wyo. 333, 294 P. 687, 75 A.L.R. 639; Fibreboard Products, Inc., v. Townsend, 9 Cir., 202 F.2d 180; Barbour v. Thomas, D.C., 7 F.Supp. 271; Galvin v. Simons, 128 Conn. 616, 25 A.2d 64; Kressly v. District Bond Co., 138 Cal.App. 565, 32 P.2d 1112; Everly v. Equitable Surety Co., 190 Ind. 274, 130 N.E. 227; Restatement of Contracts, Sec. 178, Comment f.

3. 2 Williston on Contracts (Rev.Ed.) Sec. 533.

4. Emerson v. Universal Products Co., 5 W. W. Harr. 277, 35 Del. 277, 162 A. 779.

5. 2 Williston on Contracts (Rev.Ed.) Sec. 533(a). See also Bulkley v. Shaw, 289 N.Y. 133, 44 N.E.2d 398.

6. D.C., 121 F.Supp. 108, 115, and Restatement of Contracts, Sec. 208.

7. Louisville Trust Co. v. National Bank of Kentucky, D.C., 3 F.Supp. 909.

particulars. The Restatement of the Law of Contracts, Sec. 207, at page 278, gives certain matters which must be included in the memorandum. It must show:

"* * * (a) each party to the contract either by his own name, or by such a description as will serve to identify him, or by the name or description of his agent, and

"(b) the land, goods or other subject-matter to which the contract relates, and

"(c) the terms and conditions of all the promises constituting the contract and by whom and to whom the promises are made. * * *"

We may now consider the three papers alleged to constitute compliance with the Statute. In May 1950 the plaintiff alleges he was engaged as an architect to prepare plans and specifications and obtain bids for the erection of an apartment house and to supervise and approve the construction and he was to be paid a stipulated percentage upon the completion of the building. The bids being somewhat more than expected, financial arrangements were not made and the building was never constructed. It is alleged that in December 1950 the initial contract was amended to provide that the plaintiff's compensation of 5% instead of being payable at the completion of the building was to be paid in four annual payments, the first payment to be made at the completion of the building. In the course of inquiry as to financing the defendant signed the papers, herein called "A" and "B" which, it is contended, comply with the Statute.

**8.** See cases collected in 49 Am.Jur. (Statute of Frauds), Sec. 353, Page 663, and

"A" was an application by the defendant to a prospective mortgagee which set out the list of proposed subcontracts and liabilities in connection with the project. Under the item "Architect" is the statement "total payment deferred".

"B" was a letter accompanying "A" and addressed to a lawyer in connection with the proposed mortgage. It referred to the location of the proposed apartment, the approximate cost and said:

"* * * Regarding the architect's fees for supervision, I have made arrangements with him whereby he is to be paid in four equal payments over a four year period. The first payment starting at the completion of the building. * * *"

Writing "C", relied upon by the plaintiff, is a written contract between the defendant and one Mattioli, a sub-contractor. Insofar as here material this contract indicates that the plaintiff (Abramson) is the architect and provides that the plans and specifications are the property of the architect and all charges for the use of the same are to be paid for by the owner.

I am of the opinion that the three writings taken individually or collectively do not comply sufficiently with the Statute of Frauds. In writings "A" and "B" no mention is made of any particular architect or engineer and unless writing "C" is read in connection with the others, the architect is not named. There is not shown in any of the writings any internal or direct connection of the three writings as among themselves, or with the alleged contract between the parties to the action. There is no mention of any particular service to be rendered by the plaintiff or the extent of such services; there is no indication of any price, consideration or amount involved and no terms of the contract are set out. These seem to be required by all the authorities.[8]

37 C.J.S., Frauds, Statute of, § 181 et seq.; Fredenburg v. Horn, 108 Or. 672,

Godwin v. Collins, 9 Del. 28, 4 Houst. 28, was an equitable action of specific performance of land where the contract was required to be in writing. The Court of Errors and Appeals of Delaware said, 9 Del. at page 55:

" * * * as the agreement is required by the statute to be in writing, the writing must speak for itself; and therefore you can no more supply defects in the agreement than you can supply the want of an agreement. The written agreement must show what the contract between the parties really is, and certainty being an essential element, the agreement must be certain in itself, or capable of being reduced to certainty by something else to which it refers, and which is thus made a part of it, so that the terms of the contract and the intention of the parties, can be ascertained with reasonable precision; for no material defect can be supplied by parol evidence. * * * "

The parties having agreed that the alleged contract was not to be performed within one year and thus by the Statute of Frauds was required to be reduced to writing or evidenced by some memorandum signed by the party to be charged and no sufficient memorandum under the Statute having been shown, so summary judgment in favor of the defendants must be granted as to the first cause of action.

■ 2. Second Cause of Action. The second cause of action may generally be termed a "quantum meruit". It alleges the nature of the work to be done by plaintiff and that 75% of the work was actually accomplished and that subsequently in March 1954 the project was abandoned and liability to the plaintiff was repudiated. The affirmative defense to the cause of action is the Statute of Limitations. The plaintiff, under this

cause of action, seeks the recovery of $28,125.

The Delaware Statute of Limitations relied upon is found in 10 Del.Code, § 8106. It is agreed that the pertinent period is three years. The action was commenced August 17, 1954, so that three years anterior thereto, viz., August 17, 1951, is the crucial time under the defense.

The defendants contend that even by the contentions of the plaintiff the plans were prepared and bids procured between May and December of 1950 and that all services under the original contract were fully completed in February of 1951. After that date the defendants, being unable to arrange the financing of the project, sought to make a "package deal" consisting of the sale of the real estate and including the plans and specifications and the defendants admit that with reference to this later proposition, the plaintiff sought revised or additional bids or estimates. They, however, contend that this had nothing to do with the plaintiff's services under the alleged oral contract of May 1950.

The plaintiff contends that the services of the plaintiff and the utilization of the plans were expressly recognized by the defendants in 1952 and 1953 and until the contract was repudiated in March 1954.

The application of the Statute of Limitations in reality gives rise to the question "Is the plaintiff too late in bringing his suit?". The answer to this query naturally involves the question as to when the suit could have been brought. The original contract of May 1950, it is contended, provided for compensation to the plaintiff at the completion of the building which was estimated as one year after its commencement. The alleged amendatory contract of December 1, 1950, provided for the compensation to the plaintiff to be paid in four annual

218 P. 939, 30 A.L.R. 1163; Franklin Sugar Ref. Co. v. Lipowicz, 247 N.Y. 465, 160 N.E. 916, 59 A.L.R. 1422. See also Williams v. Morris, 95 U.S. 444, 455, 24 L.Ed. 360.

installments, the first being due upon the completion of the building. The building was never erected but the obtaining of revised estimates of cost by the plaintiff continued until late in 1952. This, at least, is the contention of the plaintiff and if denied by the defendants would constitute a question of fact requiring the denial of the summary judgment. The attempts to use the plans prepared by the plaintiff, either under the original scheme of personal construction or as involved in the "package deal" did not cease until 1952. It is difficult to see, under the alleged contract, that the plaintiff could have maintained his action until his compensation was due, viz., when the building was erected or when a reasonable time therefor had elapsed or when the project was abandoned by the defendants. The project was not finally abandoned until March of 1954. Prior to the effective date of commencement of the period of the Statute of Limitations, viz., August 17, 1951, no claim of the plaintiff could have been enforced. In Borer v. Chapman, 119 U. S. 587, at page 602, 7 S.Ct. 342, at page 350, 30 L.Ed. 532, it is said: " * * * It cannot be that the statute of limitations will be allowed to commence to run against a right until that right has accrued in a shape to be effectually enforced." In Delaware it has been said:[9] "Statutes of Limitation begin to run when proper parties are in existence capable of suing and being sued, and a cause of action exists capable of being sued on forthwith."

I think the Statute of Limitations is no sufficient defense to the second cause of action and the motion for summary judgment directed to that cause of action is denied.

[7] 4. The Fourth Cause of Action. This cause of action is based on fraud and deceit. It is alleged that the defendants prepared and presented a financial statement of the defendants, or one of

them, which was excessive, false and misleading. The complaint expressly alleges reliance by the plaintiff upon this false representation. These allegations are specifically denied by the defendants.

Under Frederick Hart & Co. v. Recordgraph, 3 Cir., 169 F.2d 580 and Reynolds Metals Co. v. Metals Disintegrating Co., 3 Cir., 176 F.2d 90, a summary judgment can not be granted when opposed to or in denial of a well pleaded allegation of the complaint. Motion for summary judgment as to the Fourth Cause of Action is denied.

An appropriate order may be submitted.

9. Keller v. President, Directors and Company of Farmers Bank, 41 Del. 471, 2 Terry 471, 476, 24 A.2d 539, 541.