No. 12969

IN THE SUPREME COURT OF THE STATE OF MONTANA

1975

---

STC, INC., a Montana Corporation,

Plaintiff and Appellant,

-vs-

CITY OF BILLINGS, MONTANA,
a municipal corporation,

Defendant and Respondent.

---

Appeal from: District Court of the Thirteenth Judicial District,
Honorable M. James Sorte, Judge presiding.

Counsel of Record:

For Appellant:

Anderson, Symmes, Forbes, Peete and Brown,
Billings, Montana
Benjamin N. Forbes argued, Billings, Montana

For Respondent:

William J. Speare argued, Billings, Montana

---

Submitted: September 25, 1975

Decided: DEC 2 1975

Filed: DEC 2 1975

*Thomas J. Kearney*
Clerk

Mr. Justice Frank I. Haswell delivered the opinion of the Court.

Plaintiff building owner sued the City of Billings for damages based on an alleged anticipatory breach of a lease. Following a nonjury trial the district court of Yellowstone County entered judgment for defendant city. Plaintiff appeals from this judgment.

The controlling issue on appeal is whether a vote by the Billings city council on February 5, 1973 "to not re-affirm the provisions of the original lease" with STC constituted a repudiation or anticipatory breach of the lease agreement. The district court held it did not. We agree.

The facts are largely undisputed. Plaintiff is a Montana nonprofit corporation named STC., INC. It was formed for the purpose of renovating and preserving the Old Chamber Building in downtown Billings as a historical landmark. Its funds were derived essentially from donations and loans. It had no capital stock.

In 1972 plaintiff corporation purchased the land and a building known as the Old Chamber Building. It was purchased from a group known as the Executive Investors by paying it about $37,000 and assuming an indebtedness of $115,000 on a contract for deed with the Billings Chamber of Commerce.

In June 1972, a written lease agreement was executed between plaintiff corporation and the City of Billings covering a part of the Old Chamber Building. The agreement provided that plaintiff corporation agreed to remodel the premises to suit the needs of the city, and the city agreed to lease the remodeled premises for ten years at a monthly rental of $3,290. The remodeling was to be done generally in accordance with exhibits attached to the agreement, and was required to begin by the end of March 1973. The agreement was subject to the following condition:

- 2 -

"This Lease is subject to the condition subsequent that Lessor is able to obtain the necessary financing to remodel the premises in accordance with the needs of Lessee as aforesaid. In the event the Lessor is unable to obtain such financing in order to satisfactorily remodel the same premises, then this Lease shall be deemed void and of no effect, and neither of the parties shall have any obligation to the other. Such refinancing and remodeling shall be obtained and commenced, respectively, by the end of March, 1973, or this condition shall be deemed to have occurred."

The lease covered the main floor, second floor, and part of the basement of the Old Chamber Building. It did not cover the third floor. The city was also given an option to purchase the land and building during the term of the lease by assuming the indebtedness against the property and agreeing to preserve the building.

On June 5, 1972, the lease was approved by the city council by a 5-4 vote. Plaintiff corporation then proceeded with attempts to secure the financing necessary for remodeling. It attempted to secure funds from HUD, a federal agency, but found there were no funds available from this source. It applied to the Billings Clearing House, an association of local banks, and received this letter dated November 28, 1972:

"The Billings Clearing House Association is willing to consider a real estate loan application on the former Chamber of Commerce Building, located at 301 North 27 Street, subject to completion of the following:

"1. Firm ten-year leases sufficient to cover operating expenses and loan amortization. Leases to be acceptable to lender.

"2. Outstanding indebtedness to the Billings Chamber of Commerce be paid in full, and there be no secondary real estate financing, all equity funds in first.

"3. Acceptable plans and specifications.

"4. Firm bids from acceptable contractors.

"5. Structural engineers report.

"The maximum loan considered would be $250,000.00

- 3 -

based on an economic valuation, with a 10-year term and 17-year amortization. The interest rate on the loan would be based on the prevailing commercial real estate loan rate at the time the above conditions had been accomplished. Presently that rate is 8 1/2% to 9%.

"This letter is not to be construed to be a commitment."

Plaintiff corporation also had a letter of intent dated December 8, 1972 from a Billings law firm to lease the entire third floor of the building for a 10-year term at $1,650 per month, subject to remodeling and availability of the remodeled premises by approximately July 1, 1973.

Plaintiff corporation had additional prospects of securing financing from a Seattle firm, a local limited partnership, and through the sale of limited partnership interests in the enterprise. None of these prospects was beyond the talking stage.

The architect's estimate of the projected cost of the necessary remodeling was originally $288,980, later reduced to approximately $285,000.

On February 5, 1973 at a meeting of the City Council the minutes indicate the following proceedings:

"REPORT OF COUNCIL OF THE WHOLE that the Council not re-affirm provisions of the original lease with the Save-The-Chamber Committee. Moved by alderman Lidderdale, seconded by alderman Leuthold that the recommendation of the Council of the Whole be approved. A substitute motion was made by alderman Schoenthal, seconded by alderman Fillner that the Council approve re-affirming the provisions of the original lease. The substitute motion lost. The Council then proceeded to vote upon the original motion to not re-affirm the provisions of the original lease. Upon roll call alderman Leuthold, Lidderdale, Rye, Riedl, Lesniak, Schoenthal voted aye. Alderman Fillner, Chapel voted no. Motion carried 6 to 2."

Thereafter no further efforts to secure financing were pursued by plaintiff corporation, remodeling was never done, and the city never went into possession under the lease.

On February 22, 1973, plaintiff corporation sued the

- 4 -

city for specific performance of the lease agreement, or in the alternative for damages for breach of the lease. The complaint alleged that the city repudiated its lease with plaintiff corporation by the action of the city council on February 5, 1973; that this repudiation of the lease constituted an anticipatory breach of contract by the city; and that plaintiff was entitled to judgment. Subsequently plaintiff abandoned its claim for specific performance.

Defendant answered, in effect contending (1) the original lease was invalid, (2) plaintiff corporation was never ready, willing and able to proceed with the required financing and re-modeling, (3) the action of the city council on February 5, 1973, did not repudiate or breach the lease, and (4) denying the claimed damages.

A nonjury trial was held on September 5, 1974, in the district court of Yellowstone County before the Hon. M. James Sorte, district judge presiding. Following trial, both parties submitted proposed findings of fact, conclusions of law and briefs. Judge Sorte adopted the proposed findings and conclusions of defendant city and entered judgment in its favor.

The basis of the district court's decision is focused in two findings of fact and two conclusions of law:

"FINDINGS OF FACT

" * * *

"7. That the evidence revealed the only loan obtainable by the plaintiff at times material to this action was in the maximum amount of $250,000.00 and it was conditioned upon plaintiff having free and clear title to the subject premises, which premises were then encumbered by contract for deed in the amount of $114,616.80 and that necessary remodeling costs were estimated to be not less than $288,980.00.

"8. That plaintiff was not ready, willing and able to perform the financing and remodeling requirements on its part to be performed on February 5, 1973,

March 31, 1973 or at any other time material to this action.

" * * *

"CONCLUSIONS OF LAW

" * * *

"2. That the action of the defendant City Council on February 5, 1973 did not amount to a repudiation or an anticipatory breach of said written agreement of June 30, 1972.

"3. That plaintiff failed to perform the conditions of obtaining financing and commencing remodeling as prescribed by the terms of said written agreement of June 30, 1972 and therefore said agreement by its terms is void.

" * * *."

Plaintiff corporation has appealed from the judgment, assigning two issues for review: (1) Did the city breach the lease agreement? (2) Is plaintiff entitled to damages?

Plaintiff corporation's contentions on appeal can be summarized in this manner: (1) the original lease of June 30, 1972 is valid and enforceable; (2) the action of the city council on February 5, 1973 amounted to an anticipatory repudiation and breach of the lease; (3) because of the city's breach on February 5, 1973, the lease was terminated and further performance by plaintiff corporation thereunder was excused; and (4) that plaintiff corporation is entitled to damages of $95,340 representing the difference between the rental provided in the lease and the reasonable rental value of the premises, discounted to its present worth.

The contentions of the city can be summarized as follows: (1) The original lease agreement is invalid because it was not approved by a vote of the people, the city loaned its credit to a private corporation in violation of the Montana Constitution, and the agreement lacks mutuality of obligation and remedy. (2) The action of the city council on February 5, 1973 did not constitute

- 6 -

a repudiation of the lease nor a breach of its provisions. (3) That at no time was plaintiff ready, willing and able to perform the financing and remodeling requirements on its part to be performed under the lease so the lease became void by its terms and neither party has any obligation to the other. (4) Plaintiff corporation is entitled to no damages because there was no breach by the city, and in any event the measure of damages claimed by plaintiff corporation is incorrect.

Our decision in this appeal is bottomed squarely on one issue: Did the action of the city council on February 5, 1973 constitute a breach of the lease?

Plaintiff claims the council's action constituted an anticipatory repudiation of the lease giving rise to an immediate action for damages against the city. This Court has never ruled directly one way or the other on whether such action is maintainable in Montana.

An anticipatory breach of contract by the promisor is a repudiation of his contractual duty before the time fixed in the contract for his performance has arrived. 4 Corbin on Contracts § 959, p. 855; New York Life Ins. Co. v. Viglas, 297 U.S. 672, 56 S.Ct. 615, 80 L ed 971. The legal effect of an anticipatory breach of contract is described in 17A C.J.S. Contracts §472(1), pp. 653-655, in this language:

> "Where a party bound by an executory contract repudiates or renounces his obligation before the time for performance, the promisee has, according to the great weight of authority, an option to treat the contract as ended, as far as further performance is concerned, and to maintain an action at once for the damages occasioned by such anticipatory breach, repudiation, or renunciation, even in the absence from the contract of a specific provision authorizing the maintenance of an action or the declaring of a forfeiture."

To like effect see: 11 Williston on Contracts Section 1324, p. 139; 17 Am Jur 2d, Contracts 910; 14 Cal Jur 3d Contracts

- 7 -

/§295, p. 625;  4 Corbin on Contracts

§959, pp. 852-853.  Also see the leading English case from which

the doctrine arose, Hochster v. De La Tour, 2 El. & Bl. 678,

and the leading American case adopting the English rule, Roehm

v. Horst, 178 U.S. 1, 20 S.Ct. 780, 44 L Ed 953.

The reasons supporting an action for anticipatory breach

of contract have been variously stated to be:  the uselessness

and inequity of requiring the promisee to hold himself in readi-

ness to perform his contractual obligation on the date perform-

ance is due where the promisor has already repudiated his reciprocal

obligations under the contract; the present injury to the implied

right of each of the contracting parties to refrain from impair-

ing the ability or willingness of the other to perform when per-

formance is due; the duty of the promisee to mitigate damages by

withholding expenditures in preparation for carrying out his con-

tractual obligations where the promisor will not perform in any

event; the social and economic waste incident to prolonging a

contractual status that is effectively at an end; and the neces-

sity that the law recognize the commercial desirability of fixing

legal rights, liabilities and damages as promptly as possible.

This doctrine has been specifically applied to anticipa-

tory repudiation of leases by the lessee.  Hawkinson v. Johnston,

122 F.2d 724; Dalin v. Lovell, 257 Wis. 82, 42 N.W.2d 456, 49

Am Jur 2d Landlord & Tenant, §178, p. 202; 51C C.J.S. Landlord &

Tenant §250(2), p. 653.

In Montana there is language in one prior decision of

this Court indicating that an anticipatory repudiation by one

party to a contract excuses further performance by the other,

this rule being quoted with approval in McCaull-Dinsmore Co. v.

Jackson, 57 Mont. 555, 560, 189 P. 771:

> "'Where one party repudiates in advance his
> obligations under the contract and refuses to
> be longer bound thereby, communicating such

> repudiation to the other party, the latter party
> is excused from further performance on his part.'"

This case strongly suggests recognition in Montana of an action based on anticipatory repudiation of a contract.

Montana statutes and case law generally support the bases on which the doctrine of anticipatory breach rests, for example, "The law neither does nor requires idle acts." Section 49-124, R.C.M. 1947; "For every wrong there is a remedy." Section 49-115, R.C.M. 1947; and the duty to mitigate damages in an action for breach of contract, Brown v. First Fed. Svgs. & Loan, 154 Mont. 79, 460 P.2d 97. We find no reason in policy or in law for denying an immediate action for damage based on an anticipatory repudiation of a contract.

The crux of the instant case is whether the action of the city council on February 5, 1973 constituted an anticipatory repudiation of the lease agreement. The city council voted to "not re-affirm provisions of the original lease". Plaintiff treats this as a repudiation or renunciation of the city's obligations under the lease. But was it?

It appears to us that the action of the city council was subject to different interpretations. It might have meant the new mayor and council did not want to go on record as approving the original lease. It might have meant the new mayor and council refused to assist plaintiff corporation in its efforts to secure the necessary financing for remodeling by an affirmative expression of support. It might have meant the new mayor and council were repudiating the lease and refused to perform the city's obligations thereunder.

The language of the proposition on which the council voted is significant in our view. The council voted "not to re-affirm". The council did not vote "not to affirm". The council did not vote to repudiate, renounce, or cancel the lease, nor adopt any

language manifesting an intention not to carry out its obligations under the lease. The language of the proposition on which the council voted was equivocal, ambiguous, and subject to conflicting interpretations.

The circumstances support a like conclusion. A city election intervened between the execution of the lease and the vote of the council on February 5, 1973. Some new aldermen and a new mayor had been elected who opposed the lease. STC, INC. had not secured the necessary financing despite some seven month's effort. Time was running out. Less than two months remained before the lease agreement would expire by its own terms if financing was not secured. No rational basis existed for the city to repudiate the lease at this time and under these circumstances, while a good reason did exist for the new mayor and council to refuse to go on record as approving the lease negotiated by their predecessors, or to refuse to assist STC, INC. in obtaining financing. At the very least the circumstances are equally consistent with this interpretation of the council's intention. The collective intention of the city council remains ambiguous and equivocal.

A repudiation or renunciation must be entire, absolute and unequivocal to support an action for anticipatory breach. 17A C.J.S. Contracts §472(2), p. 659; 17 Am Jur 2d, Contracts §450, p. 914; 14 Cal Jur 3d, Contracts §298, p. 630; 4 Corbin on Contracts § 973, p. 905; Restatement, '48 Supp. Contracts, §318(a), p. 251; 5 Williston on Contracts (Revised Edition) §1324, p. 3724; Dingley v. Oler, 117 U.S. 490, 6 S.Ct. 850, 29 L ed 984; Kimel v. Missouri State Life Ins. Co., 71 F.2d 921; Palmiero v. Spada Distributing Co., 217 F.2d 561.

> "The doctrine of breach of contract by anticipatory repudiation works harsh results, and for its application, there must be a 'positive statement

> to the promisee or other person having a right
> under the contract, indicating that the promisor
> will not or cannot substantially perform his
> contractual duties; * * *.'"

> Regional Enterprises, Inc. v. Teachers Insurance
> and Annuity Ass'n, 352 F.2d 768, 775, and cases
> cited therein.

Anticipatory breach must appear only in the clearest terms of repudiation of the contractual obligation. Guerrieri v. Severini, 51 Cal.2d 12, 330 P.2d 635; Hertz Drive-Ur-Self Stations, v. Schenley Distill. Corp., 119 C.A.2d 754, 260 P.2d 93. An expression of intent not to perform, or not to be bound, standing alone, is not enough. Campos v. Olson, 241 F.2d 661; Rehart v. Klossner, 48 C.A.2d 46, 119 P.2d 148; nor is a mere assertion that a party will be unable, or will refuse, to perform his contract an anticipatory renunciation. City of Buena Park v. Boyar, 186 C.A.2d 61, 8 Cal.Rptr. 674.

Applying these rules, we hold the action of the city council on February 5, 1973 to "not re-affirm provisions of the original lease" was not a positive, unequivocal, absolute expression of intention by the city not to perform its contractual obligations under the lease. Accordingly, it will not support an action for anticipatory breach and plaintiff's action must fail.

Our ruling on the first issue renders consideration of the second issue unnecessary.

The judgment of the district court is affirmed.

_Frank I. Haswell_
                    Justice

- 11 -

We concur:

-------------------------------
Chief Justice
Gene B Daly
-------------------------------


-------------------------------

Wesley Castles
Justices